John KOSTIDIS, Appellant–Plaintiff,

v.

GENERAL CINEMA CORP. OF INDIANA; Schostak Brothers & Company, Inc., Sierra Financial, Ltd., County Seat Limited Partnership; Lake and Porter County Asphalt Maintenance Co., Appellees–Defendants.

No. 64A05–0012–CV–521.

Court of Appeals of Indiana.

Aug. 17, 2001.

John E. Hughes, Kevin G. Kerr, Hoeppner Wagner & Evans, Valparaiso, IN, Attorneys for Appellant.

David P. Jones, Newby, Lewis, Kaminski & Jones, LaPorte, IN, James L. Clement, Jr., Emery Clement & Schmidt, Merrillville, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

John Kostidis, plaintiff below, appeals the court's entry of summary judgment in favor of defendant Lake and Porter County Asphalt Maintenance Company, Inc. ("L & P"), and the court's judgment, entered on the jury's verdict, in favor of General Cinema Corporation of Indiana, Schostak Brothers & Company, Inc., Sierra Financial, LTD., County Seat Plaza, and County Seat Limited Partnership, all defendants below. We affirm.

### Issues

The issues presented by Kostidis include:

I. Did the trial court err in granting L & P's motion for summary judgment?

II. Did the trial court abuse its discretion by giving certain instructions, and by refusing others?

### Facts and Procedural History

On February 2, 1996, Kostidis went to see a movie with his family at the General Cinema Theater in the County Seat Plaza strip mall in Valparaiso, Indiana. As he was walking from his car to the theater, Kostidis slipped and fell on a patch of ice in the parking lot, landing on his outstretched hand. County Seat Plaza was owned by County Seat Limited Partnership, which was itself a subsidiary of Sierra Financial Ltd. Sierra Financial, through County Seat Limited Partnership, hired Schostak Brothers to manage County Seat Plaza. Schostak Brothers hired L & P to remove ice and snow from the parking lot.

Kostidis filed his complaint on July 10, 1997, and an amended complaint on December 17, 1997, claiming that he sustained personal injuries as a result of the defendants' negligent failure to keep the parking lot safely clear of ice and snow.[1] On July 6, 2000, L & P filed its motion for summary judgment, arguing that it could not be liable because its work had been accepted by Schostak Brothers. The trial court granted this motion on October 2, 2000. The case proceeded to trial against the remaining defendants on October 10, 2000, and the jury returned its verdict on October 17, 2000, determining that Kostidis was 51% at fault, and apportioning the remaining fault among the defendants. The court entered judgment on the jury's verdict that day.

Kostidis appeals.

---

1. Kostidis's wife unsuccessfully sought damages for the alleged loss of her husband's consortium. She is not a party to this appeal.

## Discussion and Decision

### I. Summary Judgment

#### A. Standard of Review

The trial court entered summary judgment in favor of L & P in response to its argument that its duty to Kostidis terminated when Schostak Brothers accepted L & P's work. Kostidis argues that Schostak Brothers's alleged acceptance of the work is a question of fact requiring a trial. Kostidis further contends that even if L & P's work was accepted, the contract between Schostak Brothers and L & P specifically precluded the termination of L & P's liability for damages to third parties upon Schostak Brothers's acceptance of L & P's work.

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. When reviewing a decision to grant summary judgment, this court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.*

A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *American Management, Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App. 1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* A defendant in a negligence action may obtain summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense. *Jacques v. Allied Bldg. Services of Indiana, Inc.*, 717 N.E.2d 606, 608 (Ind.Ct. App.1999).

#### B. Analysis

Kostidis claimed that L & P negligently failed to remove the patch of ice that caused the accident. To establish L & P's liability, Kostidis was required to prove that L & P owed him a duty, that L & P breached that duty, and that this breach proximately caused Kostidis's alleged damages. *See U–Haul Intern., Inc. v. Mike Madrid Co.*, 734 N.E.2d 1048, 1053 (Ind.Ct.App.2000). Kostidis argues that L & P owed a duty to perform its snow removal work with reasonable care. We agree. The evidence designated to the trial court indicated that L & P contracted with Schostak Brothers to remove snow from the County Seat Plaza parking lot after an inch or more of snow had fallen. In a contract for work, there is an implied duty to do the work skillfully, carefully, and in a workmanlike manner, and a party may be liable for its negligent breach of that duty. *Hagerman Const., Inc. v. Copeland*, 697 N.E.2d 948, 958 (Ind.Ct. App.1998), *trans. denied.* One inch of snow fell on January 29, 1996, and L & P plowed and salted the parking lot that evening. L & P accordingly had a duty to perform this work with reasonable care.

In addition, a duty of care may be assumed. In general, when a person " 'undertakes ... to render services to an-

other which he should recognize as necessary for the protection of a third person,'" he is "'subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking....'" *Auler v. Van Natta,* 686 N.E.2d 172, 175 (Ind.Ct. App.1997) (quoting RESTATEMENT (SECOND) OF TORTS § 324A, at 142 (1965)). Approximately one-third of an inch of snow fell on January 30. Although no additional snow had fallen, and though the total snowfall since its last plowing was less than one inch, L & P returned to the parking lot on January 31 to clear the snow that had fallen the previous day, and to put salt down in the area. L & P thus assumed a duty to perform its work on January 31 with reasonable care.

■ L & P, however, notes that an independent contractor generally owes no duty of care to third parties with regard to the contractor's work, and thus cannot be liable for injuries resulting from its work, after that work has been accepted by the general contractor or property owner. *See Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 170 (Ind.1996).[2] According to L & P, it owed Kostidis no duty as a matter of law at the time of the accident because the undisputed material evidence showed that Schostak Brothers accepted L & P's snow removal work the day before the accident.

The evidence designated to the trial court shows that Glen Miller, a Schostak Brothers employee, was responsible for inspecting the County Seat Plaza parking lot and adjacent sidewalks to determine whether those areas required maintenance or repairs. He toured the property approximately once each month to conduct his inspections. In snowy weather, he looked for conditions that might pose a safety hazard for patrons, including patches of ice in need of salting. Miller visited the parking lot on February 1, 1996, the day between L & P's most recent work and Kostidis's accident. If Miller had seen an area in need of further plowing or salting, he would have arranged for L & P to return to the property to perform the work. Neither Miller nor L & P, however, had any record or recollection that L & P was asked to return to the property to perform further work prior to Kostidis's accident.

■ Kostidis argues that this evidence did not establish, as a matter of law, that Schostak Brothers accepted L & P's snow removal work prior to Kostidis's his fall, and maintains that there are genuine issues of fact for trial regarding this question. Whether an owner or general contractor has accepted an independent contractor's work may be determined by reference to several factors, including whether (1) the owner or its agent reasserted physical control over the premises or instrumentality; (2) the work was actually completed; (3) the owner expressly communicated an acceptance or release of liability; or (4) the owner's actions permit a reasonable inference that the work was accepted. *Blake,* 674 N.E.2d at 171. The rule relieving independent contractors of liability upon the acceptance of their work is based on the notion that the party in control of a premises is generally in the best position to prevent harm to third persons. Thus, "[i]n evaluating 'acceptance' for these purposes, the focus is on whether the owner was better able than the contractor to prevent injury

---

**2.** A contractor may remain liable for damages caused by his work after the work has been accepted if the contractor leaves the work in a state that presents an unreasonable risk of imminent harm to third parties. *Blake,* 674 N.E.2d at 172. Kostidis does not contend that this exception to the acceptance rule applies here.

to third parties at the time the harm occurred." *Id.*

L & P relies on the factually similar case of *Lynn v. Hart,* 565 N.E.2d 1162 (Ind.Ct. App.1991), in support of its position that the designated evidence established, as a matter of law, that L & P cannot be liable because Schostak Brothers accepted L & P's work before the accident. In *Lynn,* as here, the plaintiff slipped and fell on a recently plowed parking lot. *Id.* at 1163. After the lot was plowed, the property owner rode across the area on his bicycle but experienced no problems and did not call the snow removal contractor and ask him to return and perform more work before the accident occurred. *Id.* at 1164. This Court concluded that these facts failed to give rise to a genuine issue of material fact regarding the property owner's acceptance of the snow plow contractor's work, and we accordingly affirmed the trial court's entry of summary judgment for the contractor. *Id.*

Kostidis responds by arguing that this case is more like *Jacques,* 717 N.E.2d 606, in which we distinguished *Lynn* and reversed a similar grant of summary judgment. In *Jacques,* a grocery store customer slipped and fell on an invisible patch of floor wax apparently left by a floor maintenance contractor the night before. *Id.* at 607. The customer sued the grocery store and the floor maintenance contractor, but the contractor obtained summary judgment, claiming that the grocery store, whose manager had walked through the premises prior to the accident, had accepted its work. *Id.* A panel of this Court disagreed. We noted that in *Lynn,* the condition of the premises after the snow removal contractor had finished its work would have been easily ascertainable by the owner, who rode across the parking lot on his bicycle prior to the accident. *Id.* at 610. We thus explained that it was rea-

sonable in *Lynn* to infer that the property owner's failure to recall the snowplow contractor after observing plainly visible conditions constituted acceptance of the work. *Id.* We stated in *Jacques,* however, that such an inference was not permissible in that case primarily because the patch of wax on which the plaintiff slipped would not have been revealed upon visual inspection. *Id.*

In the present case, there is no indication that the patch of ice on which Kostidis slipped was invisible or would not have been discovered upon Miller's visual inspection. Moreover, while L & P had control over snow removal operations in the parking lot and on the sidewalks, there is no evidence suggesting that L & P retained control over the premises once its work was completed. The evidence indicates that L & P's January 31, 1996 work was actually completed on that date, as reflected by the invoice L & P forwarded to Schostak Brothers for that date's work. L & P's completion of its work and its relinquishment of any control it had over the property is further evidenced by the fact that Schostak Brothers's designated property inspector, Miller, apparently found L & P's work satisfactory and did not ask L & P to return to perform additional services. Moreover, although Schostak Brothers did not expressly communicate its acceptance of the work or its release of L & P from any liability, the fact that Miller visited the property but apparently found it unnecessary to recall L & P for further work permits the reasonable inference that the work was in fact accepted. Under these circumstances, Schostak Brothers, and not L & P, would have been in the best position to prevent harm to third persons posed by any defective conditions remaining on the property after the January 31, 1996 work, because L & P would have had no reason to return absent

a call from Schostak Brothers. Thus, under the rule set out in *Blake,* and the decisions in *Lynn* and *Jacques,* we conclude that the designated evidence does not support the existence of a genuine issue of fact regarding the acceptance of L & P's work.

■ Kostidis argues that even if Schostak Brothers accepted L & P's work prior to the accident, a provision in the contract between L & P and Schostak Brothers precluded L & P's relief from liability. The provision in question provides as follows:

> 2. That [L & P] shall not be relieved of any responsibility for faulty materials or workmanship by acceptance of, nor by payment for, the work or materials; but he shall remedy any and all defects and pay for any damage to the work resulting from such defects, or the removal or replacement, appearing within one year from the completion of said work, unless separate guarantee shall exceed such period of time.

(R. 77.) This provision does not help Kostidis. First, Kostidis does not explain how he is the beneficiary of a term in a contract to which he was not a party. More importantly, the provision is inapplicable here because it does not relate to L & P's liability for injuries to third parties like Kostidis. Rather, by its plain terms the provision pertains only to L & P's responsibility for "faulty materials or workmanship," and damage "to the work resulting from such defects." Summary judgment was therefore properly entered for L & P.

## II. Jury Instructions

### A. Standard of Review

■ Instruction of the jury is left to the sound judgment of the trial court, and our review of a trial court's decisions in this regard is highly deferential: we will not disturb the court's judgment absent an abuse of discretion. *Smock Materials Handling Co. v. Kerr,* 719 N.E.2d 396, 402 (Ind.Ct.App.1999). A trial court abuses its discretion by refusing a tendered instruction only when: (1) the instruction correctly states the law, (2) the evidence supports the instruction, and (3) the substance of the charge is not covered by other instructions. *Id.* Jury instructions will be considered as a whole and not individually, and a court does not necessarily abuse its discretion by giving an erroneous instruction. *Id.* To find that the court abused its discretion by giving an erroneous instruction, we must find that the instructions taken as a whole misstate the law or otherwise mislead the jury. *Id.* Further, errors in instruction are harmless and do not require reversal where the verdict would have been no different had the jury been properly instructed. *Id.*

### B. Analysis

#### 1. Incurred Risk

The trial court gave the following instructions over Kostidis's objection:

> A person incurs the risk of injury if [she][he] knew of a danger, understood the risk involved, and voluntarily exposed [herself] [himself] to such danger.

> In deciding whether the plaintiff incurred the risk, you may consider the experience and understanding of the plaintiff; whether the plaintiff had reasonable opportunity to abandon the course of action; and whether a reasonable person would have abandoned the course of action.

> If you decide that the plaintiff incurred the risk of some or all of the injuries claimed, then such conduct con-

stitutes fault to be assessed against the plaintiff.

(Supp. R. 42.)

The defendant has the burden of proving that the plaintiff incurred the risk. If you find by a preponderance of the evidence that defendant has failed to sustain that burden, the defense of incurred risk must fail. If, however, you find by a preponderance of the evidence that plaintiff did incur the risk of injury, you must then determine the extent to which the incurred risk will affect the plaintiff's recovery by following the comparative fault instruction.

(Supp. R. 43.) Kostidis claims that the court erred by giving these incurred risk instructions because there was insufficient evidence that Kostidis was aware of the icy condition of the parking lot. We disagree.

▮▮▮▮ The affirmative defense of incurred risk requires evidence of a plaintiff's actual knowledge and appreciation of the specific risk involved and voluntary acceptance of that risk. *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1121 (Ind. Ct.App.1995). Kostidis is correct that a plaintiff must have more than the general awareness of a potential for mishap. *See id.* Rather, incurred risk contemplates acceptance of a specific risk of which the plaintiff has actual knowledge. *Id.* Here, the specific risk at issue was the danger of slipping on ice or snow at the County Seat Plaza. Kostidis testified that he knew there was ice and snow on the ground, assumed that there would be ice and snow in the parking lot, and knew he should be watchful for icy conditions. This evidence sufficiently demonstrated Kostidis's actual knowledge of the risk at issue, and the

trial court did not err by giving its incurred risk instructions.[3]

▮▮▮▮ Kostidis also takes issue with the trial court's refusal to give the following instruction:

The defendants have raised the defense of incurred risk. The defendants have the burden of proof on this issue. Before you can find that the plaintiff incurred the risk of injury, you must find that the plaintiff had more than a general awareness that the conditions were icy on the day of the fall. Incurred risk requires that the plaintiff have actual knowledge and appreciation of the specific risk involved and that the plaintiff voluntarily accepts that specific risk.

(R. 428.) Kostidis argues that this instruction would have provided the jury with a fuller explanation of the law regarding awareness of risk. This instruction is a correct statement of the law. *See Town of Highland,* 659 N.E.2d at 1121. Nevertheless, the court's instruction that "[a] person incurs the risk of injury if [she][he] knew of a danger, understood the risk involved, and voluntarily exposed [herself] [himself] to such danger," covered the same issue and was not incorrect. While Kostidis's tendered instruction might have been more expansive, the trial court did not abuse its discretion by giving its own instruction correctly covering the same matter.

### 2. Accident

The court instructed the jury over Kostidis's objection as follows:

I instruct you that the duty imposed upon the Defendants did not require

---

**3.** On June 26, 2001, Kostidis filed a Motion to Strike certain portions of the Appellees' brief, in which the appellees cite to evidence from Kostidis's deposition not introduced during trial in support of their position that Kostidis was aware of the risk associated with the presence of ice and snow at the County Seat Plaza. Since the trial transcript contains sufficient evidence of Kostidis's awareness of the risk, we need not address this issue.

them to use every possible precaution to avoid the Plaintiff's injury; nor that the Defendants should have employed any particular means, which may appear after the accident, would have avoided it; nor were the Defendants required to make accidents impossible. The Defendants were only required to use such reasonable precaution to prevent the accident as would have been adopted by ordinarily prudent persons under the circumstances as they appeared prior to the accident.

(Supp. R. 17.) The court further charged the jury that:

Negligence on the part of the defendants may not be inferred merely because Plaintiff was injured on Defendants' property, but must be proven by the Plaintiff by a preponderance of the evidence.

An owner of [sic] occupier of land is not the insurer of its customer's safety, but owes the duty to use ordinary care to maintain its property in a reasonably safe condition for the use of its customers.

(Supp. R. 19.) Kostidis claims that these charges amounted to a forbidden "pure accident" instruction. We do not agree.

■■■■ Jury instructions stating that a defendant is not liable for a plaintiff's damages if those damages are the result of a "mere," "pure," or "unavoidable" accident have been prohibited in Indiana since our supreme court decided *Miller v. Alvey*, 246 Ind. 560, 207 N.E.2d 633, 636–637 (1965). The court in *Miller* explained that the term "accident" does not necessarily exclude the concepts of fault or negligence, and that therefore, a charge that a plaintiff may not recover in the event of an accident is incompatible with modern principles of tort law, under which a person is liable for damages proximately caused by the failure to exercise ordinary care. *Id.* at 636.

Such instructions should require reversal regardless of whether the terms "mere," "pure," or "unavoidable" are used to modify the term "accident," because the word "accident" is inclusive and self-defining. *Weinand v. Johnson*, 622 N.E.2d 1321, 1324–1325 (Ind.Ct.App.1993) (citing *Chaffee v. Clark Equipment Co.*, 496 N.E.2d 84, 86–87 (Ind.1986) (instructions suggesting that defendant not liable for accident without using words "mere," "pure," or "unavoidable," were nevertheless erroneous)). Indeed, it would appear that an instruction could be fatally defective under this rule without ever using the word "accident," so long as the jury was advised that there is no liability for damages resulting from some kind of fortuitous event. Thus, when determining whether a particular charge is a prohibited "mere accident" instruction, our focus is on "whether the jury is likely to be misled by the use of the word 'accident' or by similar language." *Id.* at 1325. An instruction containing the term "accident" is not necessarily erroneous if it addresses the burden of proof or proximate causation. *Indianapolis Athletic Club, Inc. v. Alco Standard Corp.*, 709 N.E.2d 1070, 1076 (Ind.Ct.App.1999) (citing *Dunlap v. Goldwin*, 425 N.E.2d 724, 726 (Ind.Ct.App.1981)), *trans. denied.* Reversible error should be found, however, where the instruction addresses the issue of liability, and suggests that a plaintiff should not recover for damages resulting from an accidental event. *Id.*

■■■ The question before us is therefore whether the instructions in question likely misled the jury to believe that the defendants would not be liable if Kostidis's fall was an "accident." Although the first instruction at issue used the term "accident," it did not mention the word "liability." Both instructions, however, spoke to the defendants' duties of care. In particular, the instructions provided that the de-

fendants were not "required to make accidents impossible," and that the defendants had no duty to ensure Kostidis's safety. (Supp. R. 17.) The question of duty is a component of the broader concept of liability for negligence, and standing alone, these portions of the instructions could give jurors the impression that the defendants could avoid liability if Kostidis's fall was an "accident." However, it is not likely that the instructions here misled the jury into thinking that the defendants would not be liable for a "mere accident," because they also clearly and correctly told the jurors that the defendants were "required to use such reasonable precaution to prevent the accident as would have been adopted by ordinarily prudent persons under the circumstances ..." (Supp. R. 17), and that the defendants owed "the duty to use ordinary care to maintain [the] property in a reasonably safe condition for the use of its customers." (Supp. R. 19.) These statements clearly indicated to the jury that the defendants could be liable for Kostidis's fall even if the fall was an "accident," and were sufficient to counterbalance any confusion engendered by other portions of the instructions. The fact that the jury returned a verdict apportioning 51 percent of the fault to Kostidis and 49 percent to the defendants further supports our conclusion that the jury was not likely misled into thinking that Kostidis's fall was the result of a "mere accident," or that the defendants would be relieved of all liability if that were the case.

An analysis of several prior decisions cited by the parties and involving similar instructions further supports our conclusion. The seminal *Miller* case involved an instruction that expressly defined a "pure accident" as "an accident which arises ... which ordinary skill or precaution could not forsee [sic] or prevent, and as a consequence thereof, an accident occurs," and specifically stated that a defendant "is not liable for the damages" resulting from such an accident. *Miller*, 207 N.E.2d at 634–635. The instruction here is easily distinguishable from the one in *Miller* because in this case, the instruction did not define or even mention the idea of a "pure accident," and did not explicitly state that Kostidis could not recover for an accidental fall. The instruction here is also distinguishable from the erroneous instructions at issue in *Chaffee*, 496 N.E.2d 84, another case cited by Kostidis. The three instructions at issue in that case contained many of the same elements found in the instructions at issue here. For example, the *Chaffee* instructions advised the jury that the defendants were not the insurers·or guarantors of the plaintiff's safety, that the defendants did not have a duty to make accidents impossible, and that the fact of the plaintiff's accident did not establish the defendant's negligence. *Id.* at 85–86. However, unlike here, the charges in *Chaffee* went beyond·the general statements of law found in the current instructions, and described the facts of the plaintiff's accident in such a way that created the impression that an accident had in fact occurred. *See id.* As the supreme court stated in *Chaffee*, "[w]hen read together, there can be little doubt that the author of these instructions intended to convey to the jury that a mere accident had happened and that they should not hold [the defendant] liable as an insurer or guarantor of the safety of [the plaintiff]." *Id.* at 86. As noted above, the instructions at issue did not likely convey this misleading and improper message.

The instructions challenged by Kostidis are also distinguishable from the ones that required reversal in *Weinand*, 622 N.E.2d 1321. As in *Chaffee*, the instructions in *Weinand* contained many of the same elements found in the current instructions. *See id.* at 1323. However, the trial court

in *Weinand,* unlike here, specifically charged the jury that the collision between the plaintiff's and defendant's vehicle was an "accident ... the real cause of which cannot be traced or which is not apparent," and therefore belonged "to the class of occurrences designated as purely accidental...." *Id.* Again, the instructions here did not make a similar charge. Kostidis also cites to the *Dunlap* case, a Court of Appeals decision from 1981 that found reversible error in an instruction that provided that an owner of a swimming pool was not the insurer of the safety of pool users, and had no duty to maintain an "accident proof" pool. *See Dunlap,* 425 N.E.2d at 725. However, the next year the Indiana Supreme Court found no error in an instruction stating that the defendant was not an insurer or guarantor of the quality of its products, and had no duty to produce accident-proof goods. *Conder v. Hull Lift Truck, Inc.,* 435 N.E.2d 10 (Ind.1982). Moreover, this Court subsequently approved an instruction advising that a defendant had no duty to make accidents impossible, *see Pilkington v. Hendricks County Rural Elec. Membership Corp.,* 460 N.E.2d 1000, 1006–1007 (Ind.Ct.App. 1984), and, more recently, declined to find error in an instruction that a manufacturer has no duty to produce "accident-proof" products. *Indianapolis Athletic Club,* 709 N.E.2d at 1075. The instructions at issue in this case are more like those in *Conder, Pilkington* and *Indianapolis Athletic Club* in that the instructions here were also unlikely to mislead the jury into thinking that an accident occurred for which there would be no liability. We accordingly hold that the trial court did not abuse its discretion by giving the challenged instructions.

### 3. Fault for Failure to See Visible Conditions

 Kostidis next takes issue with the following instruction:

The exercise of reasonable care required a person to use his faculties or powers of observation in order to learn and appreciate any dangers which are naturally instant to the situation, and which should reasonably be discovered by the use of one's faculties.

You are instructed that it is negligent to fail to see something which one could see in the exercise of ordinary and reasonable care.

(Supp. R. 20.) Kostidis claims that the first paragraph improperly instructed the jury that Kostidis was under a continuous duty to be alert for danger, when that was not his duty, and that the second paragraph erroneously advised the jury to presume Kostidis's negligence from his failure to see the patch of ice on which he slipped. Kostidis objected to this instruction only on the ground that it imposed a greater duty of care on him than required by law. He has accordingly waived his allegation of error with regard to the instruction's second paragraph, and we address only his first argument. *See Tipmont Rural Elec. Membership Corp. v. Fischer,* 697 N.E.2d 83, 91 (Ind.Ct.App.1998) (noting that a party claiming error in the giving of an instruction is limited to his stated objection at trial), *trans. granted* and *affirmed,* 716 N.E.2d 357 (Ind.1999). As for the first paragraph, it is a correct statement of the law. *See Howard v. H.J. Ricks Const. Co., Inc.,* 509 N.E.2d 201, 206 (Ind.Ct.App. 1987) (noting that "[a] person is required to make reasonable use of his faculties and senses to discover dangers and conditions to which he might be exposed," and that " 'it is negligence to fail to see or hear that which you could see or hear, by the exercise of ordinary care, and for that reason the law attaches the same legal consequences for not seeing or hearing as it does if in fact you did see and hear.' " (quoting *Devine v. Grace Const. & Supply Co.,* 243 Ind. 98, 181 N.E.2d 862, 866

(1962))). The trial court therefore did not err in giving the instruction.

### 4. Duty Owed to Business Invitees

■ Lastly, Kostidis asserts that the trial court erred by failing to give two tendered instructions relating to the defendants' duties. The first of these was actually the final sentence of the following instruction Kostidis offered:

> One who is required by law to use reasonable care for the safety of the public coming onto business premises has a continuing duty to deal with ice and snow on the premises for the safety of the public. This duty is not extinguished by the knowledge of a member of the public concerning potential risks on the premises.

(R. 425.) The court gave the first sentence of the instruction, but deleted the second. As Kostidis notes, the entire tendered instruction appears to be a correct statement of the law. *See Get–N–Go, Inc. v. Markins*, 544 N.E.2d 484, 487 (Ind. 1989). The trial court, however, did not abuse its discretion by deleting the second sentence. The jury here was instructed several times that the defendants owed the duty to use reasonable care in the maintenance of common areas at the County Seat Plaza for the safety of patrons like Kostidis. The jury was appropriately never instructed that the defendants' duties extended only until Kostidis became aware of potential risks on the premises.[4] In the absence of any suggestion to the contrary, the first sentence of the instruction given here, which explained that the defendants' duties with regard to ice and snow were "continuing," was sufficient to apprise the jury that those duties would not terminate simply because Kostidis had some knowledge of the risk posed by the weather.

The second duty instruction Kostidis tendered stated:

> One who is required by law to use reasonable care for the safety of the public coming onto business premises has a duty to warn the public of latent dangers known to exist on the premises, to inspect the premises to discover possible dangerous conditions, and to take reasonable precautions to protect the public from foreseeable dangers. The fact that the premises are open to the public must be taken into account and will call for greater care than in the case of a visitor to a private home.

(R. 426.) Kostidis claims that the court erred by failing to give the second sentence of this instruction, complaining that "[t]he jury was not instructed that a business owner has a greater duty to invitees than the owner of a private home does for visitors." (Appellants' Brief at 40.) The jury was not instructed that business invitees are owed greater care than house guests because this is not the law. In *Burrell v. Meads*, 569 N.E.2d 637, 642–644 (Ind.1991), our supreme court confirmed that landowners owe business invitees and social guests the same duty to exercise reasonable care for the invitee's protection. Kostidis's tendered instruction was an incorrect statement of law, and was properly rejected by the trial court.

Affirmed.

BAKER, J., and MATHIAS, J., concur.

---

4. Such an instruction would be contrary to law, as the comparative knowledge of risk possessed by a property owner and an injured person has no bearing on the parties' respective duties. *See Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind.1990). While the knowledge of risk possessed by the parties may bear on the issue of breach of duty, *see id.*, that question was not addressed in Kostidis's instruction.