Emanuel C. BLAKE, Appellant
(Plaintiff below),

v.

CALUMET CONSTRUCTION CORP.,
Appellee (Defendant below).

No. 75S03–9509–CV–01097.

Supreme Court of Indiana.

Dec. 18, 1996.

Joseph V. Simeri, Butler & Simeri, P.C., South Bend, for Appellant.

Peter J. Agostino, Lynn E. Arnold, Kalamaros & Associates, P.C., South Bend, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case turns on the circumstances under which a contractor on a construction project may be liable to third parties injured on the site. The Court of Appeals affirmed the trial court's grant of summary judgment to defendant Calumet Construction Corporation on the ground that as a matter of law Calumet owed no duty of care to plaintiff Emanuel C. Blake. Because we find disputed issues of material fact, the grant of summary judgment is reversed and the case is remanded for further proceedings in the trial court.

### I. Factual & Procedural History

Blake was an employee of Morrison, Inc., a contractor on the site of a construction project for I/N Tek (the owner) in New Carlisle, Indiana. Calumet, another contractor on the site, had constructed a loading dock on the site adjacent to a maintenance building. Both Morrison and Calumet were working under the direction of United Engineers and Constructors, Inc. as project manager coordinating the work of all contractors. Blake was working in the maintenance building on the night of November 3, 1989. During a break at approximately nine o'clock that evening, Blake left the maintenance building through a door to the unlit loading dock area. Blake, who had never used this door before, tripped and fell approximately four feet to the concrete floor of the ramp of the loading dock, and sustained a fractured hip and other injuries. Although Calumet's contract with owner I/N Tek called for the installation of guardrails around the loading dock, no guardrails were in place at the time Blake fell.

We are unable to determine whether Calumet had three separate contracts with I/N Tek, or one contract calling for three separate items. Nor is it clear whether progress payments were required. We are not directed to any provision in any document governing payment or its effect on the legal relationship among Calumet, United or I/N Tek. However, Blake and Calumet agree that the first stage included construction of the loading dock and that the latter two stages involved unrelated work on different parts of the construction site. Calumet acknowledges that it was still doing work on the site when Blake was injured, but asserts it had moved on to the second stage of its contract with I/N Tek by that time. William Meeker, Calumet's project manager on the site, testified that Calumet's invoice records for the I/N Tek project indicated that I/N Tek had paid Calumet in full for the cost of the loading dock before Blake was injured.

On June 18, 1991 Blake filed this lawsuit against Calumet, and no one else, alleging that Calumet's negligence had caused his injuries. On November 22, 1992, the trial court granted Calumet's motion for summary judgment on the ground that Calumet owed no duty of care to Blake on the night he was injured. With one judge dissenting, the Court of Appeals affirmed, *Blake v. Calumet Const. Corp.,* 648 N.E.2d 1250 (Ind.Ct.App. 1995). Blake appeals. We have jurisdiction under Indiana Appellate Rule 11(B)(3).

### II. Standard of Review & Issue Presented

 Summary judgment is appropriate where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). Our standard of review is well-established. Although Blake, the non-moving party, has the burden of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court. *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 280–81 (Ind.1994). On summary judgment all facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Wright v. Carter,* 622 N.E.2d 170, 171 (Ind.1993). To recover under a theory of negligence, Blake must show three things: (1) Calumet owed a duty of care to Blake at the time he was injured; (2) Calumet failed to conform its conduct to that standard of care; and (3) damages were proximately caused to Blake

by the breach. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). Because the trial court granted summary judgment on the first element of negligence—duty—we address only that issue. To find a duty running from one person to another is to state the conclusion that the former may be liable to the latter. Because this Court has often spoken in these terms, we use the same terminology here.

■■■ "Duty" has been defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." W. KEETON, PROSSER & KEETON ON THE LAW OF TORTS 356 (5th ed. 1984). In deciding whether to impose a duty at common law, this Court usually considers three factors: (1) the relationship between the parties; (2) the foreseeability of the harm; and (3) public policy concerns. *Webb*, 575 N.E.2d at 995; *see also* William L. Prosser, *Palsgraf Revisited*, 52 MICH. L.REV. 1, 12–16 (1953) (discussing other considerations, such as conscience of the community and ease of administration). The duty inquiry in this case, however, is governed by a line of decisions dealing specifically with contractors' liability to third parties for construction flaws. In general, Indiana law has followed the rule that contractors do not owe a duty of care to third parties after the owner has accepted the work. An exception to this rule exists where the work is deemed dangerously defective, inherently dangerous or imminently dangerous such that it poses a risk of imminent personal injury to third parties. Although the existence of duty is generally a question of law, *see Webb*, 575 N.E.2d at 995, under this line of authority duty in this case turns on two factual issues: did the owner accept the loading dock before the accident occurred and, if so, did the loading dock nonetheless present a risk of imminent personal injury as of that time? Both must be established favorably to Calumet by undisputed facts for summary judgment to be appropriate.[1]

### III. Did I/N Tek Accept Calumet's Work as a Matter of Law?

Blake argues that the material fact of acceptance in this case is in dispute. Specifically, Blake points to the lack of guardrails around the loading dock and asserts that Calumet's failure to complete the work in accordance with its contract with I/N Tek creates a jury question on whether I/N Tek accepted Calumet's work. In reply, Calumet contends that guardrails were in fact installed before November 3, 1989 but had been removed by a third party. Calumet asserts that its work on the loading dock had been accepted as a matter of law—installation of guardrails notwithstanding—because Calumet's billing records indicate that I/N Tek paid for the loading dock in full two months before Blake's fall. Calumet also argues that it had relinquished physical control of the loading dock area before November 3, 1989, also indicating an acceptance.

■■■ Contractors are liable for negligence while their work is in progress because they are presumably in a better position than the landowner to prevent injuries to third parties. *Rush v. Hunziker*, 216 Ind. 529, 24 N.E.2d 931 (1940). However, because a contractor's presence is transient the law has sought to relieve the contractor of liability after the work is accepted and completed, subject to some exceptions. *Daugherty v. Herzog*, 145 Ind. 255, 44 N.E. 457 (1896) is the seminal Indiana case holding that a contractor's duty of care to third parties is extinguished upon acceptance of the work. In

---

1. Indiana law on these two points mirrors RESTATEMENT (SECOND) OF TORTS § 385 (1965); *see also Building Contractor's Liability: An Extension of MacPherson v. Buick*, 24 IND. L.J. 286 (1949) (presaging Second Restatement). Some more recent authority conditions the contractor's duty of care on general foreseeability principles, regardless of the time the work was accepted. W. KEETON, PROSSER & KEETON ON THE LAW OF TORTS 722–23 (5th ed. 1984); *but see* 41 AM JUR.2D *Independent Contractors* § 73 & n. 52 (1995) (listing jurisdictions still following current Indiana approach). A Palsgraf-like foreseeability standard may have some advantages because it obviates possible confusion caused by terms like "acceptance" or "imminently dangerous." *Cf., e.g., Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996) (discarding common-law distinction between invitees and licensees and holding that landowners owe duty of reasonable care, predicated upon foreseeability, to all persons lawfully on land). However, we do not consider in this case whether Indiana law should revisit the acceptance rule because this issue has not been briefed, and neither party has asked us to disregard established Indiana precedents.

*Daugherty,* the contractor remodeled the front wall of a drug store. Two years after the work was completed and turned over to the owner, the wall collapsed and killed the plaintiff's daughter, who had been walking on the public sidewalk below. In affirming the trial court's grant of a demurrer, we reasoned that "[t]here must be some causal connection between the negligence and the hurt; and such causal connection is interrupted by the interposition, between the negligence and the hurt of any independent human agency." *Daugherty,* 145 Ind. at 257, 44 N.E. at 457 (internal quotation marks omitted). Thus, we emphasized in *Daugherty* that a contractor's duty of care ceases once the owner is again better able than the contractor to prevent harm to third parties.

■ In the hundred years since *Daugherty,* we have not had occasion to elaborate · on the underlying rationale for terminating the contractor's duty of care upon acceptance and how that rule should be applied, although we have restated the rule on at least two occasions. *See Travis, Admx. v. Rochester Bridge Co.,* 188 Ind. 79, 122 N.E. 1 (1918) (holding contractor had no duty to third party five years after bridge was constructed, accepted by municipality, and opened to public); *Citizens Gas & Coke Util. v. American Economy Ins. Co.,* 486 N.E.2d 998 (Ind.1985) (noting and restating *Daugherty* rule but deciding case on other grounds).[2] In evaluating "acceptance" for these purposes, the focus is on whether the owner was better able than the contractor to prevent injury to third parties at the time the harm occurred. Factors informing the acceptance inquiry include whether: (1) the owner or its agent reasserted physical control over the premises or instrumentality; (2) the work was actually completed; (3) the

owner expressly communicated an acceptance or release of liability; or (4) the owner's actions permit a reasonable inference that the work was accepted. The owner can indicate an acceptance by re-occupying, leasing, selling or otherwise using the premises in a manner inconsistent with further physical control or construction activity by the contractor.

■ Applying these criteria here, we cannot agree with the trial court and Court of Appeals that I/N Tek accepted Calumet's work on the loading dock as a matter of law. There are conflicting factual signs as to whether I/N Tek or United had interposed itself, in the manner contemplated by *Daugherty,* to break the causal connection between Calumet and Blake so as to relieve Calumet of its duty of care. That Calumet billed I/N Tek and claims to have received full payment before Blake was injured may suggest an acceptance, but on summary judgment and without proof of other facts it is inconclusive. Calumet's contract with I/N Tek may have provided for progress payments, but the contract is not included in the record. Calumet points to William Meeker's deposition testimony to support its argument that I/N Tek accepted the work, but this testimony is inconclusive because it adds up to no more than that I/N Tek paid Calumet's bill. The fact of payment alone cannot support summary judgment because payment could have occurred for a number of reasons, including mindless processing of submitted paperwork. The record is bereft of any other indication that the owner was subjectively satisfied with the work, or had communicated satisfaction, assuming it existed, or had any intent to accept the loading dock without the guardrails, if in fact none had ever been installed.

---

2. Like *Citizens Gas,* several Court of Appeals decisions have restated *Daugherty* 's holding but were not forced by the factual posture presented to apply it. *See Keith v. Van Hoy, Inc.,* 656 N.E.2d 872, 873 (Ind.Ct.App.1995), *trans. denied; Computer Co. v. Davidson Industries,* 623 N.E.2d 1075, 1076 (Ind.Ct.App.1993); *St. Paul Fire & Marine v. Pearson Const.,* 547 N.E.2d 853, 856 (Ind.Ct.App.1989), *trans. denied; Nat'l Steel Erection v. Hinkle,* 541 N.E.2d 288, 292 (Ind.Ct.App. 1989); *Snider v. Bob Heinlin Concrete Const. Co.,* 506 N.E.2d 77, 80–81 (Ind.Ct.App.1987); *trans.*

*denied.* Only one Court of Appeals case has had to apply *Daugherty* 's acceptance rule. *See Lynn v. Hart,* 565 N.E.2d 1162 (Ind.Ct.App.1991) (affirming grant of summary judgment for contractor). For a concise summary of Indiana's acceptance rule and the reasons behind it, see *Hartford Fire Ins. v. Pure Air On Lake Ltd.,* 859 F.Supp. 1189, 1193–97 (N.D.Ind.1994) (denying contractor's motion for summary judgment in diversity case on ground that under Indiana law work had not been accepted).

Moreover, there is no record support for Calumet's claim that United or I/N Tek had asserted physical control over the loading dock area. On the contrary it is unclear who, if anyone, was in charge of this part of the construction site on November 3, 1989.[3] Other facts in the record suggest that acceptance had not yet occurred. For example, Calumet was still on the site at that time. Although it is undisputed that no guardrails were in place on the night of Blake's fall, there is a dispute whether the loading dock was completed in accordance with the specifications of Calumet's contract with I/N Tek.[4] Calumet cites to Meeker's testimony that suggests guardrails were installed before November 3, 1989 and that they had been removed, but some of the affidavits in the record support the conclusion that guardrails were never installed. This factual dispute bears directly on whether Calumet had fulfilled its obligations under the contract and, thus, whether the work can be inferred to have been accepted. It must be submitted to a jury. Blake may eventually lose on the acceptance issue. At this stage we hold only that he is entitled to a trial on the point.

## IV. Was the Loading Dock Not "Imminently Dangerous" as a Matter of Law?

■ Even assuming the jury finds that I/N Tek accepted Calumet's work before Blake's fall on November 3, 1989, Calumet may owe Blake a duty of care on other grounds. Although contractors under *Daugherty* owe no duty to third parties after the owner has accepted the work, several exceptions have been carved out from this general rule. A number of Court of Appeals

cases have recognized an exception for work presenting an unreasonable risk of imminent injury to third parties. In that situation, the contractor has been held to owe a duty of care after even acceptance. *See Keith,* 656 N.E.2d at 873; *Hamilton v. Roger Sherman Architects,* 565 N.E.2d 1136, 1139 (Ind.Ct. App.1991); *Lynn,* 565 N.E.2d at 1163–64; *Nat'l Steel,* 541 N.E.2d at 292; *Snider,* 506 N.E.2d at 81.[5] Blake argues that the lack of a guardrail creates a jury question on whether the loading dock was in an imminently dangerous condition. Calumet counters that the loading dock was not imminently dangerous as a matter of law because it contained no hidden defects, Blake was aware of the lack of a guardrail, and other workers on the site had exited through the same door to the loading dock area without falling. In affirming a grant of summary judgment for Calumet on this issue, the Court of Appeals, with one judge dissenting, held that the undisputed facts showed the loading dock was not imminently dangerous and therefore no jury question was presented. *Blake,* 648 N.E.2d at 1252–54.

■ Nearly sixty years ago, the Appellate Court declared: "A contractor continues [to be] liable [after acceptance] where the work is turned over by him in a manner so negligently defective as to be imminently dangerous to third persons." *Holland Furnace Co. v. Nauracaj,* 105 Ind.App. 574, 580–81, 14 N.E.2d 339, 342 (1938), *trans. denied.* And in *Citizens Gas* we stated that "[t]he requirements of privity have been abolished ... [for] contractor liability involving personal injury caused by a product or work in a condition that was dangerously defective,[6] in-

---

**3.** To support its argument on this issue Calumet points to the affidavits of Jim Eubanks, a United employee. Record at 114–15, 129–30. However, Eubanks states only that United "had responsibility to see that the clean-up on the project was properly completed." Record at 130. This evidentiary reed is far too slender to support summary judgment for Calumet. That United was to be in charge of clean-up does not necessarily mean it had reasserted physical control over the loading dock area when Blake fell.

**4.** Calumet acknowledged in an interrogatory that its contract with I/N Tek called for the installation of guardrails. Record at 116.

**5.** For an older Appellate Court case holding to this effect, see *Northern Indiana Public Service Co. v. Otis,* 145 Ind.App. 159, 250 N.E.2d 378, 412 (1969), *trans. denied* (upholding jury instruction stating that contractor could be held liable after acceptance for work left in defective condition imminently dangerous to third persons).

**6.** An independent contractor's work is "dangerously defective" if the work is turned over in a condition that has a propensity for causing physical harm to foreseeable third parties using it in reasonably expectable ways. *See* IND.CODE § 33–1-1.5–2.5 (1993) (defining "defective products" using similar terms); BLACK'S LAW DICTIONARY 418

herently dangerous [7] or imminently dangerous [8] such that it created a risk of imminent personal injury." *Citizens Gas*, 486 N.E.2d at 1000. However, neither *Citizens Gas* nor *Holland* squarely established this exception because both involved only property damage. *Citizens Gas* expressly declined to find an exception to the requirement of privity between the contractor and claimant without personal injury. Both decisions, however, observed that an exception is available for dangerous conditions that cause personal injuries. This exception, which we now hold to be the law of the state as long as we adhere to *Daugherty*'s acceptance rule, is rooted in sound policy. As the contractual relationship approaches or is at an end, contractors should generally be allowed to proceed to other projects free of the dark cloud of possible litigation. As discussed above, the other contracting party—typically the owner—is better able after acceptance to prevent harm to third persons. However, work turned over in a defective or dangerous state presents a different circumstance; important considerations of deterrence and prevention militate in favor of imposing an ongoing duty of care. Contractors presumably will think twice before turning over a dangerous instrumentality if they know they can be called to account for injuries it produces. The possibility of harm from the condition is foreseeable by the contractor. And although landowners sued for such injuries can usually implead the contractor who erred, the balance of interests here favors a direct legal relationship between the wrongdoer and tort victim.[9]

Plaintiffs must do more than simply plead "dangerously defective," "inherently dangerous" or "imminently dangerous" to avoid summary judgment. Some evidence must be presented tending to show that the work or instrumentality presented an imminent risk of personal injury to third parties. In this case, the lack of a safety device on a darkened construction site is enough to present a jury question on the loading dock's status as an imminently dangerous condition. A jury could find that the loading dock on November 3, 1989 was reasonably certain to place life or limb in peril.

Finally, Calumet points to Blake's awareness of the lack of a guardrail and asserts his own negligence caused Blake to fall into the ramp area. But these points do not factor into whether Calumet owed Blake a duty of care. Rather, they bear on comparative fault and come into play at the causation stage. The jury must first decide the duty issue.[10]

(6th ed. 1990) (defining "defective condition" using similar terms).

7. Work is "inherently dangerous" if there is "[d]anger inhering in [the] instrumentality or condition itself at all times, so as to require special precautions to prevent injury." BLACK's LAW DICTIONARY 782 (6th ed. 1990). The work as turned over must have been likely to cause harm; a remote chance of injury is insufficient. *Id.* As has been noted, the term "inherently dangerous" is more often used to refer to dangerous activities such as blasting, rather than conditions or instrumentalities, as here. *See Nat'l Steel Erection*, 541 N.E.2d at 292.

8. Work is "imminently dangerous" if it "is reasonably certain to place life or limb in peril." BLACK's LAW DICTIONARY 750 (6th ed. 1990). "[T]he inquiry must focus on whether the structure if defectively constructed, creates a risk of impending, serious danger." *Nat'l Steel Erection*, 541 N.E.2d at 293.

9. Contractors are not liable to third parties merely for carrying out plans or directions, so long as the plans are not so obviously dangerous or defective that no reasonable contractor would follow them. W. Keeton, Prosser & Keeton on the Law of Torts 722–23 (5th ed. 1984). However, this "exception within the exception" does not apply here because, at least for summary judgment purposes, Calumet did not complete its contract with I/N Tek in accordance with the contract's specifications.

10. Two other "guardrail" cases saw a summary disposition in favor of an independent contractor reversed on appeal. In *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984) the plaintiff had fallen from an internal stairway in her apartment and sustained personal injuries. She sued the building contractor, claiming the contractor had been negligent for failing to install a guardrail on the stairway, as provided in the apartment's architectural plans. In reversing a directed verdict for the contractor, the Idaho Supreme Court held that the contractor owed the plaintiff a duty of reasonable care and that a jury had to determine if the contractor's failure to install the guardrail amounted to a breach of that duty. 678 P.2d at 48. *Cf. also Kala Investments, Inc. v. Sklar*, 538 So.2d 909 (Fla.Dist.Ct.App.1989), in which a young child was injured after falling out of a fourth-story window lacking a guardrail. In that case, because the contractor's work had already been accepted the existence of duty hinged on

## Conclusion & Disposition

The factual record in this dispute is undeveloped on several critical points and does not support summary judgment. Accordingly, the grant of summary judgment for Calumet Construction Corporation is reversed. This case is remanded for further proceedings in the trial court consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

whether the lack of a guardrail (a building code violation) was a "patent" defect or "latent" defect. The court reversed the grant of summary judgment for the contractor, reasoning that

whether the missing guardrail was a patent or latent defect was a disputed fact for the jury. *Id.* at 912–13.