Wayne A. PETERS and Helen Peters,
Appellants–Plaintiffs,

v.

Donald FORSTER, Appellee–
Defendant.

No. 42A01–0109–CV–350.

Court of Appeals of Indiana.

June 25, 2002.

Reheaing Denied July 31, 2002.

party follow the dictates of the Uniform System of Citation (Bluebook).

Lane C. Siesky, Barber & Shoulders, Evansville, Indiana, Attorney for Appellants.

Daniel L. Siewers, Hart, Bell, Cummings, Ewing & Stuckey, Vincennes, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Wayne and Helen Peters appeal the trial court's grant of summary judgment in favor of Donald Forster. Upon appeal, the

Peters claim that the trial court erred in granting Forster's motion for summary judgment on their claim of negligence, and raise the following restated issue: Does an independent contractor who performs work in knowing or negligent violation of applicable building codes owe a duty to third parties injured as a result of the defective condition where the work has been completed and accepted by the owner or general contractor.

We reverse.

## FACTS AND PROCEDURAL HISTORY

In the summer of 1998, Earl and Avonda Hamm purchased from their daughter's neighbor a ramp to access their home. The Hamms were both in poor health, and Earl was bedridden in a hospital bed in the living room of the couple's home. Donald Forster, an independent contractor and landlord, agreed to have two of his employees transport and attach the pre-built ramp to the Hamm residence. The installation of the ramp was completed in a matter of hours, and Forster received approximately seventy-five dollars for the work. Forster testified that the ramp was too steep and in violation of the applicable building codes for handicapped ramps. However, he stated that he did not believe the ramp was to be used as a handicapped or wheelchair ramp. Forster was not familiar with the applicable building codes for ramps that are used for other purposes besides handicapped ramps.

On March 15, 1999, Wayne Peters delivered a meal to the Hamm residence. As he left the home, his feet slipped from underneath him on the ramp, and he fell and injured himself. He incurred more than $134,000.00 in medical bills and has been unable to work. The Peters subsequently filed a lawsuit against the Hamms, alleging they were negligent in the mainte-nance of the ramp. By amended complaint, Donald Forster was later added as a defendant. The Hamms were dismissed from the case after the claim against them was settled. Forster moved for summary judgment, which the trial court granted:

> Upon review of facts and evidence presented at hearing on "Motion For Summary Judgment", [sic] the Court now having considered the "Defendant's Motion For Summary Judgment" and being duly advised of the premises and pursuant to Trial Rule 56–B, does hereby grant the Defendant's motion and enters judgment for the Defendant, finding as a matter of law that the Defendant, Donald Forster, did not owe a duty to the Plaintiff, that his work was for [the Hamms].
>
> This work was done in accordance with their request, accepted, and paid for. The contract was a limited contract to move and reattach a ramp, not to construct or reconstruct a ramp. The Defendant was hired for a limited scope of employment, and complied with the requirements of that limited scope for the benefit of the property owner and in accordance with their wishes.

*Appellant's Appendix* at 1.

The Peters now appeal the trial court's grant of summary judgment in favor of Forster.

## DISCUSSION AND DECISION

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind.Ct.App. 1998). When reviewing a decision on a summary judgment motion, we apply the same standard as the trial court. *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct. App.1994), *trans. denied* (1995). Summary judgment is appropriate only when the

designated evidentiary material shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Therefore, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was erroneous. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind.1993). We may sustain a grant of summary judgment upon any theory supported by the designated materials. T.R. 56(C); *Crist v. K-Mart Corp.*, 653 N.E.2d 140, 142 (Ind. Ct.App.1995), *trans. denied* (1996). Applying the above standard, we conclude that the trial court incorrectly granted summary judgment in Forster's favor.

■ To succeed on a negligence claim, the Peters must prove that: 1) a duty was owed to them by Forster; 2) a breach of that duty by Forster; and 3) injury to them proximately caused by that breach. *Wickey*, 642 N.E.2d at 265. Because the trial court granted summary judgment on the element of duty, the only issue is whether Forster owed the Peters a duty under the circumstances. Whether a duty exists is generally a question of law for the court to determine. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). However, factual questions may be interwoven in this issue, thus rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder. *State v. Cornelius*, 637 N.E.2d 195, 198 (Ind.Ct.App.1994), *trans. denied.* In imposing a common law duty, a court should weigh three main factors: 1) the relationship between the parties, 2) the reasonable foreseeability of the type of harm to the type of plaintiff at issue, and 3) the public policy promoted by recognizing an enforceable duty. *Webb*, 575 N.E.2d at 995.

■ Forster argues that he owed no duty to the Peters because his work had been accepted by the Hamms. Indiana has long followed the rule that, in general, independent contractors do not owe a duty of care to third parties after the owner has accepted the contractor's work. (*Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 170 (Ind.1996)) (citing *Daugherty v. Herzog*, 145 Ind. 255, 44 N.E. 457 (1896)); *U-Haul Intern. Inc. v. Mike Madrid Co.*, 734 N.E.2d 1048, 1052 (Ind.Ct.App.2000). Accordingly, evidence of the independent contractor's mere negligence is insufficient to impose liability against the contractor after acceptance of the work by the general contractor or owner. *U-Haul*, 734 N.E.2d at 1052.

■ In determining whether acceptance occurred, several factors are evaluated and include whether: " '(1) the owner or its agent reasserted physical control over the premises or instrumentality; (2) the work was actually completed; (3) the owner expressly communicated an acceptance or release of liability; or (4) the owner's actions permit a reasonable inference that the work was accepted.' " *Id.* (quoting *Blake*, 674 N.E.2d at 171). This rule relieving contractors of liability once the work is accepted is based upon the premise that the party in control of the premises is generally in the best position to prevent harm to third parties. *Kostidis v. Gen. Cinema Corp. of Indiana*, 754 N.E.2d 563, 568 (Ind.Ct.App.2001) (citing *Blake*, 674 N.E.2d at 171). Therefore, " 'in evaluating acceptance for these purposes, the focus is on whether the owner was better able than the contractor to prevent injury to third parties at the time the harm occurred.' " *Id.* at 568–69 (quoting *Blake*, 674 N.E.2d at 171).

In *Blake,* our supreme court reexamined and reaffirmed the acceptance rule first established in *Daugherty. Blake,* 674 N.E.2d at 170–71. The court noted that the rule is premised on the passing of control of the premises back to the owner. It stated that "a contractor's duty of care ceases once the owner is again better able than the contractor to prevent the harm." *Id.* at 171. After reiterating that acceptance of the contractor's work is the critical consideration, the court established the four-prong test for determining whether acceptance has taken place, which focuses on whether the owner was better able to prevent injury to third parties at the time the harm occurred.

Applying the four factors in the acceptance inquiry, the court determined that there was insufficient evidence to establish that the owner had accepted the contractor's work as a matter of law. The only evidence that the contractor presented of acceptance was that it had been paid in full before the plaintiff's injury occurred. The court noted that there was no evidence in the record that the owner was satisfied with the contractor's work. The record was also silent about who controlled the premises at the time of the injury and whether the contract was completed according to specifications. Because of this lack of evidence of acceptance, the court held that the contractor was not entitled to summary judgment on the duty issue. *Id.* at 171–72.

The *Blake* court further stated that "[a]lthough contractors under *Daugherty* owe no duty to third parties after the owner has accepted the work, several exceptions have been carved out from this general rule." *Blake,* 674 N.E.2d at 172. For instance, the contractor remains liable for injuries to third parties even after the owner has accepted the work, where the work was left " 'in a condition that was dangerously defective, inherently dangerous or imminently dangerous such that it created a risk of imminent personal injury.' " *U–Haul,* 734 N.E.2d 1048, 1052 (quoting *Hill v. Rieth–Riley Constr. Co.,* 670 N.E.2d 940, 944–45 (Ind.Ct.App.1996)). Additionally, " '[i]f the thing sold or constructed be not imminently dangerous to human life, but may become such by reason of some concealed defect, then a liability may arise against such vendor or constructor if he knew of the defect and fraudulently concealed it.' " *Nat'l Steel Erection v. Hinkle,* 541 N.E.2d 288, 292 (Ind.Ct.App.1989) (quoting *Holland Furnace Co. v. Nauracaj,* 105 Ind.App. 574, 581, 14 N.E.2d 339, 342 (1938)); *Snider v. Bob Heinlin Concrete Constr. Co.,* 506 N.E.2d 77, 81 (Ind.Ct.App.1987).

The *Blake* court determined that the lack of a guardrail at a dark construction site was sufficient to present a jury question on the loading dock's status as an imminently dangerous condition. *Blake,* 674 N.E.2d at 173. Furthermore, relying on *Kala Investments, Inc. v. Sklar,* 538 So.2d 909 (Fla.Dist.Ct.App.1989), the court also explained in a footnote that when factual issues exist as to whether the defect is patent or latent, the question of a contractor's duty is a disputed fact for the jury. *Id.*

In *Jacques v. Allied Bldg. Servs. of Indiana, Inc.,* 717 N.E.2d 606 (Ind.Ct.App. 1999), a customer at a Marsh grocery store was injured when she slipped and fell in the interior front lobby near the entrance. Allied contracted with Marsh to provide regular floor maintenance, which included a wax procedure. We reversed the grant of summary judgment entered by the trial court in favor of Allied because there was a question of fact as to whether Marsh had accepted Allied's work. *Id.* at 609. In making this determination we noted:

The record evidence on the four considerations identified in *Blake* is conflicting, when viewed in the light most favorable to Jacques, the nonmovant. First, Allied never had physical control of Marsh's premises, but it continued to assert the control that it did have—responsibility for maintenance of the sales floor—and never relinquished that responsibility to Marsh. The work was not completed because it was provided under an agreement to perform regularly-scheduled cleaning and on-demand service. Marsh never expressly communicated an acceptance to Allied. [The store manager] examined the store floor on the day that Jacques fell, and saw nothing wrong; *however, he noted that a condition of slick wax would not be apparent by visual inspection.* This evidence does not establish acceptance as a matter of law.

*Id.* at 609. We reiterated that "a visual inspection of the floor would not have revealed its condition." *Id.* at 610. Accordingly, even though there was a visual inspection by a manager, the wax build-up presented a latent defect.

▪ Applying the above case law, we initially conclude that the Hamms accepted the work. Here, the work was actually completed, the Hamms reasserted physical control over the premises, and their actions in reoccupying the construction site permit a reasonable inference that the work was accepted. Although there is evidence that Mrs. Hamm did not expressly communicate an acceptance, the reasonable inference to be drawn from the evidence before us is that the work was in fact accepted.

▪ This, however, does not end our inquiry. We must now examine whether either of the two exceptions to the acceptance rule are applicable here. We conclude that latent defects existed because the ramp failed to comply with the applica-ble building codes in effect at the time of the accident. Here, Forster installed a ramp, the quality of which did not comply with the building codes, and which created a dangerous condition that was not easily ascertainable by the Hamms. The latent defects, which were not discoverable by the Hamms reasonable inspection, revealed themselves after installation of the ramp. Forster, as the independent contractor, was in a better position to prevent the harm given his experience and expertise. Although he was not hired to build the ramp, but rather to install the ramp, he was better suited to take measurements, research the building codes, and determine if the ramp met the building code.

There was evidence that the ramp had multiple latent defects. Donald Richard, a registered forensic engineer hired as an expert, inspected the ramp after Peters fell. He issued a report in which he concluded in relevant part that:

In summary, based upon the information available at this time, I am of the opinion that:

In 1998, when the ramp was installed, the 1997 edition of the CABO One and Two Family Dwelling Code was in effect for the State of Indiana.

The ramp has 3 direct CABO Code violations, these include:

Item # 1 The 21.4% slope exceeds the maximum allowed of 12.5%.

Item # 2 The 4–inch handrail gripping surface is less than the 4.71–inch minimum.

Item # 3 The upper part of the ramp has no land and the lower end is undersized.

The handrail is loose and is not sufficiently anchor [sic] to provide the lateral resistance required to support the weight of an average adult.

The ramp is covered with a carpet that becomes slick when wet.

If the ramp had been used as a wheel chair ramp several additional violations would exist under the Indiana Handicapped Accessibility Code, as stated in the last paragraph above.

*Appellant's Appendix* at 61.

Further, Mrs. Hamm denied in her deposition that Forster ever made her aware of the fact that the ramp did not meet building codes. She contends that she was not informed about the quality of the work. Meanwhile, Forster maintains that he was aware that the ramp did not meet the specifications for a handicapped ramp and that he was not aware of the building codes for an access ramp, such as the one he installed for the Hamms. In this case, the onus of determining whether latent defects existed in the ramp should not be placed upon the Hamms. Instead, Forster was in the better position to determine whether the ramp complied with the building codes. Independent contractors should not be immune when they knowingly or negligently violate building codes. Accordingly, we reverse the trial court's grant of summary judgment in favor of Forster and remand for further proceedings.

We further note that the Peters point out in their brief that our supreme court in *Blake* put aside the issue of whether the acceptance rule should be abandoned in favor of the foreseeability rule, which is in effect in a majority of jurisdictions. The acceptance rule as adopted in Indiana is the minority rule, and the Peters urge that it is time for our supreme court to reexamine whether the reasons giving rise to the rule apply today. Our supreme court recognized this in *Blake*:

> Indiana law on these two points mirrors RESTATEMENT (SECOND) OF TORTS § 385 (1965); see also *Building Contractor's Liability: An Extension of MacPherson v. Buick*, 24 IND. L.J. 286 (1949) (presaging Second Restatement). Some more recent authority conditions the contractor's duty of care on general foreseeability principles, regardless of the time the work was accepted. W. KEETON, PROSSER & KEETON ON THE LAW OF TORTS 722–23 (5th ed.1984); but see 41 AM. JUR.2D *Independent Contractors* § 73 & n. 52 (1995) (listing jurisdictions still following current Indiana approach). A Palsgraf-like foreseeability standard may have some advantages because it obviates possible confusion caused by terms like "acceptance" or "imminently dangerous." Cf., e.g., *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996) (discarding common-law distinction between invitees and licensees and holding that landowners owe duty of reasonable care, predicated upon foreseeability, to all persons lawfully on land). However, we do not consider in this case whether Indiana law should revisit the acceptance rule because this issue has not been briefed, and neither party has asked us to disregard established Indiana precedents.

*Blake*, 674 N.E.2d at 174, n. 10.

The Peters cite to the *Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor*, 74 A.L.R. 5th 523, 544, 1999 WL 1258957, for the proposition that the recent trend is to abandon the acceptance rule in favor of a foreseeability rule. We too agree that it may be time for the rule to be revisited by our supreme court given that the reasons giving rise to the rule do not seem to apply today.

Reversed.

MATHIAS, J., and BARNES, J., concur.