Julee SCHLOSSER, as Administratrix of the Estate of Jocelyn H. Schlosser, Deceased; Jordan Schlosser, Individually and on behalf of Madysen Wagoner, a Minor; and Joshua Wagoner, on behalf of Madysen Wagoner, a Minor, Appellants–Plaintiffs,

v.

ROCK INDUSTRIES, INC., Appellee–Defendant.

State of Indiana, Appellant–Defendant,

v.

Rock Industries, Inc., Appellee–Defendant.

No. 50A03–0302–CV–56.

Court of Appeals of Indiana.

Sept. 26, 2003.

Douglas D. Small, Foley & Small, South Bend, IN, Steve Carter, Attorney General of Indiana, John H. Lewis, Office of the Attorney General, Indianapolis, IN, Attorneys for Appellants.

Don G. Blackmond, Jr., Peter J. Van Dyke, Doran · Blackmond LLP, South Bend, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Julee Schlosser, as Administratrix of the Estate of Jocelyn Schlosser, Jordan Schlosser, Individually and on behalf of Madysen Wagoner, and Joshua Wagoner, on behalf of Madysen Wagoner (collectively "the Estate") appeal a grant of summary judgment in favor of Rock Industries, Inc. ("Rock Industries") on the Estate's negligence claim. The State of Indiana ("the State") appeals the denial of its motion to amend its Answer to file a cross-claim against Rock Industries. We affirm.

### Issues

The Estate presents five issues, which we consolidate and restate as a single issue: whether Rock Industries is entitled to summary judgment.

█ The State presents a single issue: whether the trial court abused its discretion by denying the State leave to amend its answer to include a cross-claim against Rock Industries.[1]

### Facts and Procedural History

During the winter season of 1999 through 2000, the Indiana Department of Transportation ("INDOT") contracted with Rock Industries to provide a front-end loader with an operator on an as-needed basis to deal with extraordinary snowfall on the roadway in the Plymouth, Indiana area. From January 7, 1999 through January 15, 1999, over thirteen inches of snow fell in that area.

On January 7, 1999, Carlton Kindig ("Kindig"), an INDOT operations foreman, dispatched Rock Industries employee Thomas Lehiy ("Lehiy"), a front-end loader operator, to clear the crossover at the intersection of U.S. 31 and Old Michigan Road south of Plymouth ("the Intersection"). An accident had occurred at the Intersection earlier in the day. At the Intersection, Lehiy observed a snow pile in the median that he estimated to be three feet at its highest point.[2] He cleared the crossover of snow and cleared the snow pile in the median until, in his opinion, "[it was] where everyone could see." (Supp. App. at 4.) Lehiy razed the snow pile "basically down to the ground" on the west side of a yield sign, but added snow on the east side of the sign. (Supp.App. at 4.)

---

1. The State purportedly joins with the Estate in challenging the propriety of the grant of summary judgment in Rock Industries' favor. However, the State and the Estate reached a settlement disposing of the Estate's claim against the State. The State has demonstrated no personal stake in the outcome of the litigation between the Estate and Rock Industries. As such, the State lacks standing to challenge the summary judgment order, having suffered no prejudice as a result of the entry of judgment in favor of Rock Industries.

*Morris v. Bank One,* 789 N.E.2d 68, 73 (Ind. Ct.App.2003).

2. Officer Michael Gruett, who responded to the vehicle accident earlier in the day, estimated that the snow pile was six to eight feet high. In his opinion, the snow pile was not directly related to the accident and he issued to one of the drivers a ticket for failure to yield.

Snow continued to fall.[3] A second accident occurred at the Intersection on January 12, 1999. Sergeant Gary Dunlap reported to the accident scene and observed a large snow pile. He reported the problem to INDOT, and also, with the assistance of Officer Adam Gray, physically knocked down and kicked a portion of the snow pile until he felt that the driving conditions were safe. A snowplow arrived and pushed snow from one section of the snow pile.

During the early evening of January 15, 1999, a two-vehicle collision occurred at the Intersection. Driver Jordan Schlosser was injured, her thirteen-year-old sister Jocelyn Schlosser was killed; and one-year-old Madysen Wagoner was injured. The undisputed cause of the collision was impaired driver visibility due to a snow pile in the median.

On August 30, 1999, the Estate filed a complaint against the State, Rock Industries and Marshall County, Indiana.[4] On October 25, 1999, the State filed its answer. On March 20, 2002, the State filed a Motion for Leave to Amend Answer, seeking to file a breach of contract cross-claim against Rock Industries, and the motion was granted the same day. On March 27, 2002, Rock Industries filed its Motion to Reconsider Court Ruling.

On May 30, 2002, Rock Industries filed a Motion for Summary Judgment. The State filed a Motion for Summary Judgment on July 15, 2002. On August 9, 2002, the trial court held a hearing on the respective motions. On November 14, 2002, the trial court entered an order, in pertinent part as follows:[5]

> There are genuine issues of material fact that preclude the granting of the Defendant INDOT's Motion for Summary Judgment and the same is hereby DENIED.

> The Defendant Rock Industries, Inc.'s Motion to Strike the Affidavit of Carlton Kindig is DENIED.

> There are no genuine issues of material fact and that the Defendant Rock Industries, Inc.'s Motion for Summary Judgment ought to be and is hereby GRANTED.

> The Defendant Rock Industries, Inc.'s Motion to Reconsider Court Ruling ought to be and is hereby GRANTED and the Order granting the State's Motion for Leave to Amend Its Answer, Affirmative Defenses and Cross Claim, which was filed March 20, 2002 and granted by the Court March 26, 2002 is now vacated and the Motion for Leave to Amend Answer submitted by the State as to filing a Cross Claim against Defendant, Rock Industries, Inc. is now DENIED.

> The State's Motion to Bifurcate Trial is hereby DENIED.

(Appellee's App. at 22.) This appeal ensued.

---

**3.** Designated meteorological records show that 3.4 inches of snow fell on January 7th, 3.6 inches of snow fell on January 9th and 6.5 inches fell on January 12th. Ground accumulations of snow, ice and hail were recorded as 22 inches on January 7th, 24 inches on January 12th and 16 inches on January 15th.

**4.** Pursuant to a Stipulation for Dismissal, Marshall County was dismissed as a party on July 25, 2001.

**5.** The State of Indiana is the named defendant. However, the complaint more specifically contained allegations against the Indiana Department of Transportation ("INDOT"). Thus, the trial court interchangeably refers to "the State" and "INDOT."

## Discussion and Decision

### I. Summary Judgment Standard

Indiana Trial Rule 56(C) provides that a party seeking summary judgment must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. The movant must designate sufficient evidence to eliminate any genuine factual issues, and once the movant has done so, the burden shifts to the nonmovant to come forth with evidence to the contrary. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Id.*

At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice and any other matters on which it relies for purposes of the motion. T.R. 56(C). We employ the same standard used by the trial court when reviewing the grant or denial of summary judgment. *Crossno v. State*, 726 N.E.2d 375, 378 (Ind. Ct.App.2000). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.* We may sustain a summary judgment upon any theory supported by the designated materials. *Peterson v. First State Bank*, 737 N.E.2d 1226, 1230 (Ind.Ct.App.2000).

A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Cansler v. Mills*, 765 N.E.2d 698, 701 (Ind.Ct.App.2002), *trans. denied.*

### II. Negligence Elements

To recover upon a negligence claim against Rock Industries, the Estate must establish: (1) a duty owed to the plaintiffs by Rock Industries; (2) Rock Industries' breach of that duty; and (3) damages proximately caused by Rock Industries' breach of duty. *Blake v. Calumet Const. Corp.*, 674 N.E.2d 167, 169 (Ind.1996). Summary judgment is rarely appropriate in negligence cases. *Colen v. Pride Vending Serv.*, 654 N.E.2d 1159, 1162 (Ind.Ct.App.1995). Nevertheless, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim. *Id.*

Absent factual evidence designated to the trial court, negligence will not be inferred. *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 458 (Ind.Ct.App.2000). Specific factual evidence, or reasonable inferences that might be drawn therefrom, *on each element* must be designated to the trial court. *Id.* at 458. Moreover, an inference that rests on mere speculation or conjecture is not reasonable. *Midwest Commerce Banking Co. v. Livings*, 608 N.E.2d 1010, 1012 (Ind.Ct.App.1993).

### III. Summary Judgment Analysis

The Estate contends that numerous factual issues as to the performance and acceptance of Rock Industries' work preclude the entry of summary judgment in Rock Industries' favor. Rock Industries responds that undisputed facts establish that it owed no duty to the victims, because INDOT accepted its work of January 7, 1999 and also that its actions did not cause the injuries complained of, because

its work had been altered on January 12, 1999, after the second collision at the Intersection.

■ The trial court did not specify which element or elements of the Estate's negligence claim the designated materials negated. However, it is apparent from the arguments and designated materials that the dispositive inquiry is whether Rock Industries owed a duty to the victims herein.

■ Generally, an independent contractor does not owe a duty of care to third parties after an owner or general contractor has accepted the work. *McBride ex rel. Estate of McBride v. Cole Assoc., Inc.,* 753 N.E.2d 730, 735 (Ind.Ct.App.2001). Thus, evidence of the contractor's mere negligence is insufficient to impose liability against the contractor after acceptance of the work by the general contractor or owner. *Id.*

■ Contractors are liable for negligence while their work is in progress because they are presumably in a better position than the landowner to prevent injuries to third parties. *Blake,* 674 N.E.2d at 170. However, because a contractor's presence is transient, the law has sought to relieve the contractor of liability after the work is accepted and completed, subject to some exceptions. *Id.* Factors to be considered in determining acceptance include whether: (1) the owner or its agent reasserted physical control over the premises or instrumentality; (2) the work was actually completed; (3) the owner expressly communicated an acceptance or release of liability; or (4) the owner's actions permit a reasonable inference that the work was accepted. *Id.* at 171. The owner can indicate an acceptance by re-occupying, leasing, selling or otherwise using the premises in a manner inconsistent with further physical control or construction ac-

tivity by the contractor. *Id.* "In evaluating acceptance for these purposes, the focus is on whether the owner was better able than the contractor to prevent injury to third parties at the time the harm occurred." *Id.*

These factors are relevant to acceptance, although we are presented with a service contract rather than a construction contract between a property owner and contractor, the situation addressed in *Blake. See Kostidis v. General Cinema Corp. of Indiana,* 754 N.E.2d 563 (Ind.Ct.App. 2001), *trans. denied* (considering the *Blake* factors relative to snow removal operation). The pertinent inquiry in acceptance is whether INDOT, the State agency having the ultimate responsibility for highway maintenance at the Intersection, reasserted physical control or acted in a manner inconsistent with Rock Industries' continued physical control over the Intersection. In other words, was INDOT better able than Rock Industries to prevent injury to the victims of the January 15, 1999 collision?

Rock Industries designated materials showing that Kindig instructed Lehiy to "do the best he could do" in clearing the snow from the Intersection, advising that he would "find him later" and "see how things were going." (Appellee's App. 65.) Kindig, who together with the manager and unit foreman had roadway supervisory responsibility during the relevant time frame, testified in his deposition that a Class 1 route (such as U.S. 31 at Plymouth) is plowed and salted at two-hour intervals during adverse weather conditions. Each of the INDOT drivers deposed testified that his duties included looking out for snow piles impairing driver visibility, and that the appropriate response would consist of moving the snow or informing a supervisor of the situation.

 Concerning his supervision of the work Rock Industries performed at the Intersection, Kindig testified as follows:

Question: It wasn't dangerous enough to warrant removing the snow pile?

Kindig: No.

Question: So, had you driven by that intersection before that evening of the incident on the 15th and actually driven in the median to turn onto Old Michigan Road to go into Plymouth coming from the south on 31, having gone that route, had you done that, you wouldn't have seen it as a danger to warrant removing that snow pile?

Kindig: Like I say, you need to be cautious.

Question: That isn't my question. You didn't see it as a danger, warranting the removal of the snow pile?

Kindig: No, I did not.

(Appellee's App. 78.)

Question: [W]as the work inspected after the private company performed its work to make sure that it was done satisfactorily?

Kindig: Yes.

(Appellee's App. 80.)

Question: Okay. Once they completed their work, it appears as though they completed it at 1:30 a.m. on the 8th. Do you recall who inspected their work to make sure that it was done satisfactorily?

Kindig: I don't have any specific dates or times. But I know that in my, you know, day-to-day operations of driving the roads, I—I know I recall inspecting what they did and the other contractor to make sure—I never had an opportunity to—because of the hours they were working and they happened to be different from when I was working my shifts for my time off, I never actually got to meet up and talk with the operators. But I was able to see where they had done work, yes.

Question: In terms of a description of what they were to do with the snow removal and the snow removal process, what did you tell them in terms of how they were actually supposed to perform this task?

Kindig: As I said, I just basically asked them to clear the snow off the crossovers.

Question: Anything more than that?

Kindig: No.

Question: Did you find that their work had been performed satisfactorily?

Kindig: Under the conditions and then with the wind blowing back over, you know, after what they had completed, we had the wind come in, yes. They— they did what they were asked to do, clear the crossovers.

Question: Had they not done what they were supposed to do or it had not been done to your satisfaction, would you have called them back out?

Kindig: Yes, I would've.

Question: Did you call them back out?

Kindig: No, I did not.

Question: It's my understanding from your previous testimony that when a report of high snow is received by IN-DOT, it is investigated by someone. Is that correct?

Kindig: Yes. . . . I never contacted them to come back out and remove those piles and make them any smaller.

Question: Do you know why you didn't do that?

Kindig: Why I didn't do that? I just didn't feel at the time that there was a need. There was no problem areas to be calling them back out. I didn't see any.

(Appellee's App. 81–83.) The foregoing deposition testimony and other materials designated by Rock Industries indicate that Rock Industries performed the service requested, INDOT evaluated the snow removal work performed, paid Rock Industries' invoice, and reasserted control over the premises, thus accepting Rock Industries' work and relieving Rock Industries of its duty to future travelers. It was then incumbent upon the Estate to come forward with admissible evidence to the contrary in order to withstand summary judgment. The Estate failed to do so. In an effort to oppose summary judgment in Rock Industries' favor, the State proffered Kindig's Affidavit, wherein he averred that he did not check all work performed, nor did he personally inspect the Intersection crossover. This contradicts his earlier deposition testimony that he was "able to see where [Rock Industries] worked" and found that "they did what they were asked to do." (Appellee's App. 81–83.) A non-moving party cannot create an issue of fact to withstand summary judgment by submitting an affidavit that contradicts his prior deposition testimony. *Gaboury v. Ireland Road Grace Brethren, Inc.,* 446 N.E.2d 1310, 1314 (Ind.1983). The designated evidence establishes acceptance as a matter of law.[6]

▮▮▮▮▮ The Estate also argues that, notwithstanding acceptance of Rock Industries' work by INDOT, Rock Industries nevertheless owed a duty to the victims of the January 15 collision because Rock Industries' work produced a "dangerously defective, inherently dangerous or imminently dangerous" condition. *McBride v. Cole,* 753 N.E.2d 730, 736 (Ind.Ct.App.

2001). An exception to the acceptance rule makes an independent contractor liable for injuries to third persons even after the work has been completed and accepted where the work was left in a condition that was dangerously defective, inherently dangerous or imminently dangerous such that it created a risk of imminent personal injury; however, a plaintiff must do more than merely use these terms to avoid summary judgment. *Blake,* 674 N.E.2d at 173. Some evidence must be presented tending to show that the work or instrumentality presented an imminent risk of personal injury to third parties. *Id.*

To support its contention of dangerousness, the Estate designated deposition testimony of several drivers, each relating their observation of a hazardous snow pile at the Intersection either in mid-January or January 15, 1999. The Estate also relied upon expert and lay-witness opinions that the cause of the January 15, 1999 accident was impaired visibility due to an eight-to-nine-foot snow bank in the median. Construing this designated evidence in the light most favorable to the nonmovant Estate, as we must do under our standard of review, we assume that the snow pile was dangerous on January 15th. However, the designated evidence relating the condition of the snow pile on January 15th—after continued snowfall, INDOT plowing and bi-hourly maintenance during snowfall, and alteration by police officers and a snowplow on January 12th—does not support an inference that the snow pile was left in that condition by Rock Industries on January 7th.

---

**6.** The Estate also urges this Court to abolish the "antiquated common law acceptance rule," a rule followed in a minority of jurisdictions. Appellant's Brief at 35. Such is within the province of the Indiana Supreme Court, rather than this Court. We observe that the Supreme Court has recently granted transfer in *Peters v. Forster,* 770 N.E.2d 414 (Ind.Ct.App.2002), wherein a separate panel of this Court urged the Supreme Court to "revisit" the rule. *Id.* at 420.

Designated evidence establishes that INDOT accepted Rock Industries' work. Too, there is an absence of designated evidence tending to show that the snow pile of January 7th presented an imminent risk of personal injury to third parties. Lehiy, whose testimony was not contradicted, opined that "everyone could see" when he finished his work. (Supp.App. at 4.) Regardless of whether INDOT supervisory personnel inspected the Intersection and found no cause for concern, or whether they failed to inspect the Intersection during several days of extreme weather, the Estate designated no evidence from which we can infer a dangerous condition existed on January 7, 1999. Although a snow pile of some unknown dimensions may have existed when Rock Industries completed its work of January 7th, there is no evidence that the snow pile impaired driver visibility so as to present a danger. As such, the acceptance rule exception for dangerous work is inapplicable, and Rock Industries owed no duty to the victims of the January 15th collision. The trial court properly granted summary judgment in Rock Industries' favor.

### IV. Denial of Leave to File Cross–Claim

Finally, the State contends that the trial court improperly denied it the right to amend its answer to assert a cross-claim for breach of contract against Rock Industries.

Indiana Trial Rule 15(A) is the mechanism that controls the filing of amendments to pleadings, and provides in pertinent part:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty (30) days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires.

Amendments to pleadings are to be liberally allowed; however, the trial court retains broad discretion in granting or denying amendments to pleadings, and we will reverse only upon a showing of abuse of that discretion. *MAPCO Coal Inc. v. Godwin*, 786 N.E.2d 769, 777 (Ind.Ct.App. 2003). In determining whether an abuse of discretion has occurred, we look at such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party and futility of the amendment. *Id.*

Here, the State waited over two years to assert a contractual claim that could have been raised in its initial answer. Numerous depositions had been taken before the State sought to file its cross-claim. Thus, the trial court could reasonably have found both an undue delay on the part of the State and undue prejudice to Rock Industries after discovery was substantially completed. The State has demonstrated no abuse of discretion by the trial court.

### Conclusion

The trial court properly granted summary judgment to Rock Industries. The trial court did not abuse its discretion by denying the State's motion to amend its answer to assert a breach of contract cross-claim against Rock Industries.

Affirmed.

KIRSCH and VAIDIK, JJ., concur.