## RUSH *v.* HUNZIKER

[No. 27,321.   Filed January 29, 1940.   Rehearing denied
February 27, 1940.]

*Tinkham & Tinkham,* of Hammond, for appellant.

*Gavit, Hall, Smith & Gavit* and *Gavit & Richardson,* all of Gary, for appellee.

ROLL, J.—This action was brought by appellee to recover damages for personal injuries resulting from alleged negligence of appellant as hereinafter set out.

The complaint was in one paragraph, and was answered by a general denial. The cause was tried by the court without the intervention of a jury. The court found in favor of appellee and against the appellant.

Appellant filed a motion for a new trial and also a motion to modify and correct the judgment; both of which were overruled by the court.

The motion for a new trial questions the sufficiency of the evidence to sustain the decision of the court, and contends that the decision of the court is contrary to law.

The motion to modify and correct the judgment attempts to present the same question as the motion for a new trial. For that reason, what we say on the question presented by appellant's motion for a new trial will likewise apply to the motion to correct and modify the judgment.

The record presents the following facts which we think sufficient to understand the questions involved.

Appellant, by a written contract with the Gary Boat Club, Inc., agreed to construct a club house. The same

was to be completed, or, at least, ready for occupancy by July 4, 1937. By the terms of said contract, the Boat Club was to furnish all materials, and appellant was to do the work.

Some time before July 4th, it became apparent that the club house would not be completed by the time agreed upon. So the president asked appellant if he could make the club house ready for use by July 4th, to which appellant replied that he could by erecting a temporary railing around the porch, and remarked that they would have to observe that fact. The porch was on the north side of the building, and the floor thereof was twelve to fifteen feet above the ground. There was a stairway from the ground to the porch.

Appellant constructed a temporary railing around this porch by nailing "two by fours", about thirty-two or thirty-four inches from the porch floor, to upright posts that supported the porch roof. In constructing this temporary railing, appellant placed a "two by four", about forty-four inches long, extending from the upright that formed the west post of the stairway to the upright next to and immediately west of said post. This "two by four" was "toenailed" to the stairway post with five casing nails, two "sixteen penny" nails, and three "eight penny" nails. "Sixteen penny" nails are a little less than four inches long, and "eight penny" nails are two and three-quarters inches long. Casing nails have tapering heads, somewhat smaller than a common nail, and a little larger than what is known as a finishing nail, but made much on the same order as a finishing nail. Three nails were used on the top and one on each side of the "two by four", and driven in to the stairway post. This was the condition of said porch and railing on July 4, 1937. On July 4, a large crowd, consisting of members of the club and their

invited guests, assembled at the club house. Members and their guests continued to use the club house during the following week with an increased crowd on Saturday afternoon and Sunday. On July 11th, 1937, appellee and her husband, at the invitation of the president of said club, visited said club house. The record discloses that on that afternoon there were somewhere between seventy-five and one hundred persons on and around said club house.

Appellee and one, Mrs. Ballard, were standing near the railing immediately west of the stairway. While conversing they leaned against the "two by four" which formed the temporary railing at this point, and, as they described it, they half sat and half leaned against the railing. Appellee was between Mrs. Ballard and the stairway post, and, after they had been so leaning for some five minutes, the railing pulled loose from the stairway post, and appellee fell backwards to the ground, some twelve or fifteen feet below, causing the injuries complained of and described in her complaint. The evidence shows that the nails by which said railing was fastened to the stairway post had pulled through the wood of the "two by four", and remained in the post.

Appellee alleges that said guard rail was insufficiently and insecurely nailed and fastened to the upright post to which it was attached, and that appellant negligently installed said cross railing, in that the nails used were of insufficient size and were insufficient in number, and that said defect and negligence could not, by the exercise of reasonable care, be discovered by appellee, and that said defect and dangerous condition was not open to observation.

Appellant, under point one in his brief, points out that this is a tort action, and before plaintiff in such

an action is entitled to recover, she must prove: (1) that defendant, appellant, was under a legal duty to protect appellee from injury; (2) that appellant failed to discharge that duty; and (3) that injury to appellee resulted from such failure. It is conceded by appellant that if appellee established the first two of the above propositions, the third was sufficiently proven.

Taking it for granted that appellant's propositions are properly stated, we will discuss the first proposition; namely, did appellant owe any duty to protect appellee.

In the first place, appellant, as the contractor for the Gary Boat Club, Inc., knew that the club house was going to be used by the club members and their guests. That was disclosed by the conversation between the president of the club and appellant when the president asked appellant if he could have the club house ready for use by July 4th, and appellant said he could, but that it would be necessary to erect a temporary railing, and appellant proceeded to prepare the club house for use by erecting the temporary railing around the porch.

Appellee was an invited guest, and was on the premises by invitation from one who had authority to invite her. She was therefore rightfully upon the porch when she received her injuries.

It was stated in the case of *Hall* v. *Barber Door Co.,* (1933) 218 Cal. 412; 23 Pac. (2nd) 279:

> "It cannot be doubted that an independent contractor is responsible to an occupant of a building rightfully on the premises at the request or consent of the owner for any wrongful acts that may be committed by himself or his employees while the stipulated work is in progress and resulting in injuries to such occupant. The ground upon which this liability is based is the implied duty which the law casts upon the independent contractor as the person in charge and control of the

work, to see that the rights of other persons rightfully on the premises, are not injuriously affected by the performance of the work. (*Charlock* v. *Freel,* 125 N. Y. 357, 26 N. E. 262; See also 38 A. L. R. 403; *Pettyjohn and Sons* v. *Basham,* 126 Va. 72, 100 S. E. 813, where the cases are exhaustively collected and commented upon.) Upon both principle and authority, it is clear that an independent contractor, who by his own negligence creates dangerous conditions during the progress of the work, should be held responsible for an injury occasioned by those conditions to one rightfully on the premises, and should be held liable for damage directly attributable to the failure to perform this duty. (*Oregon-Washington Ry. and Nav. Co.* v. *Branham,* (C. C. A.) 259 F. 555; *Cummings* v. *C. W. Noble Co.,* 143 Wis. 175, 126 N. W. 664; *Gardner* v. *Smith,* 7 Mich. 410, 74 Am. Dec. 722.''

In concluding its discussion of this question the court said:

"We are of the opinion that plaintiff was an invitee of the owner rightfully on the premises and that the defendant under the doctrine of the above cases, owed to him a duty of due care."

The following excerpt from the case of *Cudahy Packing Co.* v. *Luyben,* 9 Fed. (2nd) 32, we think is applicable to the facts in this case.

"It is urged that the packing company owed the plaintiff only the duty not wantonly to injure him. This involves a definitation of terms. It is clearly negligence on the part of any one, whether stranger, invitor, or employer, with knowledge of what is to be done, to maintain a place which is not reasonably safe, in view of the activities and operations therein mutually contemplated."

In *De Lee* v. *T. J. Pardy Const. Co.* (1928), 249 N. Y. 103, 162 N. E. 599, the plaintiff was an employee of the electrical subcontractor, and was injured by the falling of a scaffold, erected by the plastering con-

tractor for the use of its employees. The action was against the general contractor. In holding the general contractor liable, the court said:

"Through him, (meaning the superintendent). defendant owed a duty to all persons invited upon the premises to use reasonable care for their protection."

The case of *P. B. Arnold Co.* v. *Buchanan* (1916), 60 Ind. App. 626, was an action by plaintiff against P. B. Arnold Co., for personal injuries. In that case the plaintiff and her husband had rented and leased three rooms on the second floor of a building from the owner, and during plaintiff's absence, the defendant, who was employed by the owner to make some repairs to the first story of said house, without the knowledge or consent of plaintiff, entered one of the three rooms occupied by plaintiff and removed some boards from the floor of her bedroom, and negligently left a hole in the floor about two feet square. Plaintiff returned that evening, not knowing that any one had been in her room, and entered the same. It was then dark, and she went into the bedroom to turn on the light, and stepped into said hole causing injuries. Appellant attempted to show that plaintiff was in default with her rent, and, therefore, not lawfully on the premises, but this question was decided adversely to appellant. In discussing the duty the defendant owed to the plaintiff, the court said:

"Whether such occupancy was lawful or unlawful, appellant could not ignore its knowledge thereof, and such knowledge imposed on it a duty to use ordinary care with reference to such occupants." (citing cases)

And so it seems to us, that there can be no doubt that appellee was rightfully upon the premises when she was

injured. It is also established that appellant knew when he erected the temporary railing that members of the club and their guests would be on and around the premises. Knowledge of all these facts imposed upon him a duty to exercise reasonable care for their safety. So we conclude upon the principles of law laid down by the above cited cases that appellee by proof established that there was a duty upon appellant to use reasonable care for appellee's safety, and all others, lawfully upon the premises, and if by his negligence appellee was injured, without fault on her part, appellant would be liable.

Appellant next contends that there is no evidence that appellant was negligent. The question of whether appellant was guilty of negligence is usually a ██ question for the jury, or if tried by the court, a question for the trial court. If there is any legal evidence to support the verdict of the jury, or the decision of the court, this court, on appeal, will not reverse the trial court for insufficient evidence.

The evidence shows that the "two by four" was "toe-nailed" to the upright with five casing nails. Three nails were placed on top and one on each side. ■ The cross railing pulled loose from the upright when appellee and another lady leaned against it. An examination of the end of the "two by four" showed that the nail heads had pulled through the wood; that part of the end of the railing had splintered off. It was also shown that it would require more pressure to pull nails with flat heads through the wood than it would if casing or finishing nails were used. Also it was shown that if more nails had been used the railing would have withstood a greater pressure. The jury or court, in determining questions of fact, have a right to draw inferences and conclusions from

the facts proven. We think the evidence, taken in its entirety, was sufficient to support the decision of the court. We cannot say that there was no evidence of negligence on the part of appellant.

Appellant says that the evidence shows appellee guilty of contributory negligence as a matter of law. We cannot agree with this contention. From the evidence as set out in this opinion, we think the evidence sufficient to entitle appellee to have the question determined by the jury or the trial court. We cannot say as a matter of law that appellee was guilty of contributory negligence.

We find no reversible error.

Judgment affirmed.

NOTE.—Reported in 24 N. E. (2d) 931.