GUY'S CONCRETE, INC. and Modern Heating & Cooling, Inc., Appellants– Defendants,

v.

Dawn CRAWFORD and Scott Crawford, Appellees– Plaintiffs.

No. 45A03–0210–CV–343.

Court of Appeals of Indiana.

Aug. 18, 2003.

Frederick J. Ball, Highland, IN, Attorneys for Appellant Guy's Concrete, Inc.

Daniel W. Glavin, Beckman Kelly & Smith, Hammond, IN, for Appellant Modern Heating & Cooling, Inc.

Robert A. Clifford, Jeffrey J. Kroll, J. Ryan Potts, Chicago, IL, Donald W. Rice, Portage, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

In this consolidated interlocutory appeal, Guy's Concrete, Inc. ("Guy's Concrete") and Modern Heating & Cooling, Inc. ("Modern")[1] appeal the trial court's denial of their motions for summary judgment on a complaint filed by Dawn and Scott Crawford. Guy's Concrete raises two issues and Modern raises one issue, which we consolidate and restate as:

I. Whether the trial court erred by finding that Guy's Concrete and Modern owed a duty to Dawn; and

II. Whether the trial court erred by denying Guy's Concrete's motion for summary judgment which alleged that its actions were not the proximate cause of Dawn's injuries.

We affirm.

The relevant facts designated by the parties follow. In February 2000, Slager Homes, Inc. ("Slager Homes") was constructing a house in the Fox Run Estates subdivision in Schererville, Indiana. Slager Homes subcontracted with Guy's Concrete to perform concrete work and Modern to perform heating and cooling work. According to Slager Homes, each subcontractor was responsible for safety in "their particular area." Appellant's Appendix at 443.

During the course of framing the residence, the framing subcontractor created an "L" shaped opening in the floor for a stairwell to the basement. The opening to the basement was approximately four feet wide and six to eight feet long. Because the concrete basement floor had not yet been poured, the framing subcontractor could not construct the stairs to the basement. According to the framing subcontractor, he placed a 2 X 4 piece of wood at waist level horizontally across the doorway. The 2 X 4 was apparently removed at some point. However, the record does not indicate who removed it.

On February 14, 2000, Guy's Concrete entered the property to place a heater in the basement in order to thaw the basement floor. Guy's Concrete lowered a heater into the basement and then placed Celotex over the stairwell hole to retain the heat in the basement. The Celotex at issue here was a green and yellow insulating material that was approximately one inch thick. It is generally used as "[s]heating on the outside of a house." *Id.* at 101. Celotex is not strong enough to support the weight of a person walking on it. Guy's Concrete took no "precautions" to prevent a person from walking on the Celotex after covering the hole to the basement because use of the Celotex was "an industry practice" and other contractors "would know what it was for." *Id.* at 101, 107.

On February 15, 2000, Jack and Kim Slager attended a dinner party where they

---

1. We direct Modern's attention to Ind.App. Rule 46(A)(10) which requires an appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

met Dawn Crawford. Dawn told the Slagers that she was interested in buying a home. The Slagers encouraged Dawn to look at the house they were constructing in the Fox Run subdivision. They did not make specific arrangements for Dawn to view the house, but Dawn told them that she would look at the house.

The next morning, Modern's employee, Douglas Webb, arrived at the house to "bleed" the gas lines and turn on the furnace in the basement. *Id.* at 411. Webb removed the Celotex from the opening to the basement, performed his work in the basement, and then replaced the Celotex over the opening. As Webb was leaving, Dawn arrived at the house. Dawn told Webb that she was there to look at the house. Webb asked Dawn to move her vehicle and told her to leave the door unlocked. Webb did not tell Dawn about the Celotex over the basement opening.

Dawn entered the house through the front door, walked through the living room, entered the kitchen, looked at the garage, and then returned to the kitchen. She then noticed a room near the kitchen that she believed to be a pantry. The room was actually the opening to the basement. As she entered the room, Dawn stepped onto the Celotex, which snapped and caused her to fall into the basement. As a result of the fall, Dawn became paralyzed from the waist down.

Dawn filed a complaint against Slager Homes, Guy's Concrete, Modern, J.B. Builders, Inc., Oak Hill Construction, and Hawk Development Corporation. Dawn alleged that Guy's Concrete and Modern owed a duty of care to her, that they were negligent, and that she was injured as a proximate cause of their negligence.

Guy's Concrete filed a motion for summary judgment, alleging that it owed no duty to Dawn and that its actions were not the proximate cause of Dawn's injuries.

The trial court denied Guy's Concrete's motion for summary judgment. In determining whether a duty existed, the trial court examined: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. The trial court found that Guy's Concrete "had some control over the area where Dawn stepped and fell through the Celotex" and Guy's Concrete's "control of the premises and area where Dawn fell, shared though it may be, is sufficient to create a relationship." *Id.* at 17. Further, the trial court found that "[a]s a prospective buyer interested in viewing the home, Dawn was legally on the property and was a foreseeable victim." *Id.* at 18. The trial court also found that public policy issues favor the imposition of a duty.

Modern also filed a motion for summary judgment, alleging that it did not owe a duty of care to Dawn. The trial court found that "Modern had some control over the area where Dawn stepped and fell through the Celotex," its employee "removed and put back the Celotex, in effect recreating the hazardous condition," and its employee "crossed paths with Dawn and provided no warning regarding that condition." *Id.* at 23–24. Consequently, the trial court found that "[h]aving balanced the factors which must be considered in determining whether a common law duty can be imposed on Modern, this Court finds that Modern owed to Dawn a duty to use reasonable care for her safety" and, thus, denied Modern's motion for summary judgment. *Id.* at 24 (footnote omitted).

Guy's Concrete and Modern appeal the trial court's denial of their motions for summary judgment. On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: sum-

mary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 460–461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.*

██ When a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as it did here, the method of our review is not changed. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

██ Initially, we note that Dawn's complaint alleges that both Guy's Concrete and Modern were negligent. A plaintiff must establish three elements in order to recover on a negligence theory: (1) the existence of a duty on the part of the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) the failure of the defendant to conform its conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by that failure. *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 250 (Ind. 1996). A negligence action is rarely an appropriate case for disposal by summary judgment. *Carroll by Carroll v. Jagoe Homes, Inc.*, 677 N.E.2d 612, 615 (Ind.Ct. App.1997), *trans. denied.* Rather, issues of negligence, causation, and reasonable care are most appropriately left for a determination by the trier of fact. *Id.* On appeal, both Guy's Concrete and Modern argue that they owed no duty of care to Dawn. Additionally, Guy's Concrete argues that its alleged negligence was not the proximate cause of Dawn's injuries.

### I. Duty of Care

██ The first issue is whether the trial court erred by finding that Guy's Concrete and Modern owed a duty to Dawn. Whether a duty exists is generally a question of law for the court to determine. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991), *reh'g denied.* " 'Duty' has been defined as 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' " *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 170 (Ind.1996) (quoting W. Keeton, *Prosser & Keeton on the Law of Torts* 356 (5th ed.1984)). Courts will generally find a duty where reasonable persons would recognize and agree that a duty exists. *Estate of Heck ex rel. Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind.2003), *reh'g denied.*

Both Guy's Concrete and Modern argue based upon premises liability principles that, as subcontractors, they were not owners or occupiers of the premises, and, thus, had no duty to exercise care for the protection of invitees on the property. In support of its argument, Guy's Concrete relies, in part, upon *Woods v. Qual–Craft Indus.*, 648 N.E.2d 1198 (Ind.Ct.App.1995), *trans. denied,* for the proposition that it was not an owner or occupier of the premises and, thus, owed no duty of care to Dawn. In *Woods*, a concrete subcontractor cut a section of foundation wall and pushed

the sections into an area outside the foundation wall. *Id.* at 1200. A few days later, another subcontractor constructed a scaffold over the area where the concrete was located. *Id.* While some employees were doing carpentry work on the scaffold, the scaffold collapsed. *Id.* The employees fell onto the concrete slabs left by the concrete subcontractor. *Id.*

One of the employees filed a complaint against the concrete subcontractor alleging that the concrete subcontractor owed a duty based upon premises liability. *Id.* The employee argued that the concrete subcontractor, as an occupier of the premises, owed a duty to protect invitees. *Id.* The trial court granted the concrete subcontractor's motion for summary judgment, finding, in part, that the concrete subcontractor owed no duty to the employee. *Id.* On appeal, we agreed and held that premises liability was inapplicable because the concrete subcontractor was not a landowner or occupier of the premises. *Id.* at 1201. We also held that a duty did not exist because "it was not reasonably foreseeable that [the employee] would be injured due to [the concrete subcontractor's] act of leaving the concrete on the ground at the job site."[2] *Id.* at 1202.

■ We agree that, as in *Woods,* a duty is not created based upon premises liability because Guy's Concrete and Modern were not landowners or occupiers of the premises. *See, e.g., Duffy v. Ben Dee, Inc.,* 651 N.E.2d 320, 323–324 (Ind.Ct.App. 1995) (holding that a contractor had no duty of care to a third party under a premises liability theory because the contractor was not a landowner or occupier, but expressing no opinion as to whether the contractor owed a duty to the third party under general negligence principles because the third party's legal theory was restricted to premises liability), *reh'g denied, trans. denied.* However, in the Crawfords' complaint, summary judgment responses, and appellees' brief, they do not claim that Guy's Concrete or Modern owed a duty to Dawn based upon premises liability principles.[3] Consequently, premises liability principles are inapplicable in this case.

■ Rather, the Crawfords' claims that Guy's Concrete and Modern owed a duty to Dawn are based, in part, upon the principle that contractors performing work owe a duty to third persons rightfully on the construction premises. We have held that, in general, a contractor has a duty to use ordinary care both in its work and in the course of performance of the work.[4]

2. Moreover, we held that the concrete subcontractor's actions were not the proximate cause of the employee's injuries. *Woods,* 648 N.E.2d at 1202. Rather, the intervening collapse of the scaffold, which could not have been foreseen by the concrete subcontractor, was the proximate cause of the employee's injuries. *Id.*

3. Although the Crawfords mention in the complaint that Dawn was an invitee on the property, this allegation is relevant to a determination of whether Dawn was rightfully on the property. *See infra.*

4. Guy's Concrete and Modern analyze the duty issue by using our supreme court's three-part analysis set forth in *Webb. See Webb,* 575

N.E.2d at 995 (holding that in determining whether to impose a duty, the following factors must be balanced: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns). However, it is unnecessary for us to perform the *Webb* analysis because our supreme court and this court have already held that contractors performing work owe a duty to third persons rightfully on the construction premises. *See, e.g., Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 977 (Ind.2001) (holding that it was unnecessary to engage in the three-part *Webb* test to determine if the school had some other additional duty because our supreme court had already declared the nature of the duty a school owes its students).

*Computer Co., Inc. v. Davidson Indus., Inc.*, 623 N.E.2d 1075, 1076 (Ind.Ct.App. 1993); *see* 21 I.L.E. Negligence § 39–40 (2001). Our supreme court has held that "[c]ontractors are liable for negligence while their work is in progress because they are presumably in a better position than the landowner to prevent injuries to third parties." *Blake*, 674 N.E.2d at 170. Further, our supreme court has noted that:

> It cannot be doubted that an independent contractor is responsible to an occupant of a building rightfully on the premises at the request or consent of the owner for any wrongful acts that may be committed by himself or his employees while the stipulated work is in progress and resulting in injuries to such occupant. The ground upon which this liability is based is the implied duty which the law casts upon the independent contractor, as the person in charge and control of the work, to see that the rights of other persons, right-fully on the premises, are not injuriously affected by the performance of the work.... Upon both principle and authority, it is clear that an independent contractor, who by his own negligence creates dangerous conditions during the progress of the work, should be held responsible for an injury occasioned by those conditions to one rightfully on the premises and should be held liable for damage directly attributable to the failure to perform this duty.

*Rush v. Hunziker*, 216 Ind. 529, 533–534, 24 N.E.2d 931, 933 (Ind.1940) (quoting *Hall v. Barber Door Co.*, 218 Cal. 412, 23 P.2d 279, 281 (1933) (internal citations omitted)). Thus, "[w]here an independent contractor is in control of the construction or premises and the independent contractor's negligence results in injury to another person on the premises, the independent contractor may be held liable under Indiana law." *Hartford Fire Ins. Co. v. Pure Air on the Lake, L.P.*, 859 F.Supp. 1189 (N.D.Ind.1994). In determining whether Guy's Concrete and Modern had a duty to Dawn, we must determine whether: (1) Guy's Concrete and Modern were performing work and in control of the construction or premises; and (2) whether Dawn was rightfully on the premises.

■ We first discuss whether Guy's Concrete and Modern were performing work and in control of the construction or premises. The Crawfords argue that Guy's Concrete and Modern were in the process of completing their work and had some degree of control of the premises. Both Guy's Concrete and Modern argue that they did not have control over the construction site. Specifically, Guy's Concrete argues that it did not have control because it had no authority over who was or was not on the property. Modern argues that it had no authority to exclude Dawn from the property or to erect "a barrier or posted warnings concerning the stairwell." Appellant's Brief of Modern at 14. Both Guy's Concrete and Modern interpret the control issue too narrowly. The issue is not whether Guy's Concrete or Modern had complete authority over the construction site or authority to limit persons from visiting the site. Rather, the issue is more appropriately stated as whether Guy's Concrete or Modern had control over the construction alleged to be the cause of the injuries at issue—i.e., the Celotex covering the opening to the basement.

In support of its argument that it did not have control, Modern relies upon *Helton v. Harbrecht*, 701 N.E.2d 1265 (Ind.Ct. App.1998), *trans. denied.* However, we find *Helton* distinguishable from this case. In *Helton*, a contractor was building a home for Helton's son. *Id.* at 1266. Helton visited the construction site to show

the house to some of her friends. *Id.* At that time, the contractor had temporarily moved to another job site and had not been at the house for approximately one month because Helton's son was performing the electrical, painting, flooring, and drywall work. *Id.* at 1267–1268. While climbing down a ladder, Helton fell and was injured. *Id.* at 1266. She filed a complaint against the contractor alleging negligence, and the trial court granted summary judgment in favor of the contractor. *Id.* On appeal, we held that the undisputed evidence showed that the contractor "did not exert control over the premises at the time" of Helton's injury and, therefore, owed no duty to her. *Id.* at 1268.

Here, the designated evidence demonstrates that both Guy's Concrete and Modern exercised some control over the basement opening and the Celotex. Unlike the contractor in *Helton* who had not been at the job site in a month and was not performing any work at the time, the designated evidence shows that Guy's Concrete had placed a heater in the basement to thaw the basement floor and covered the basement opening with the Celotex two days before the accident. Guy's Concrete did not block the doorway to the basement opening in any way. Guy's Concrete returned to the site the next day, which was the morning before the accident, to refill fuel for the heater. Modern was at the site the morning of the accident, removed the Celotex, performed some work in the basement, and replaced the Celotex. In fact, Modern's employee, Webb, was at the site when Dawn arrived. Webb was aware that Dawn was there to look at the house at Slager's invitation. However, Webb did not tell Dawn about the Celotex, and Dawn fell minutes later. Both Guy's Concrete and Modern were performing work and exercised control over the opening to the basement and the Celotex.

We next address whether Dawn was rightfully on the premises. According to the Crawfords, Dawn was on the property at the invitation of Jack Slager. Guy's Concrete and Modern do not dispute that Dawn was rightfully on the premises as an invitee of Slager Homes. Rather, Guy's Concrete and Modern argue that they should not be required to protect against such unknown visitors. The Crawfords argue that it was foreseeable that prospective buyers would visit a residence under construction. In determining whether a duty exists, the foreseeability component requires a general analysis of the broad type of plaintiff and harm involved without regard to the facts of the actual occurrence. *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind.Ct.App.1996), *trans. denied.* The issue is not, as argued by Guy's Concrete, whether Guy's Concrete should have foreseen that Dawn would visit the house on the morning of the accident. Rather, a more general analysis is required. The issue is whether it was foreseeable that other persons would visit the house and be harmed by stepping on the Celotex. The trial court found that "new construction often attracts visitors who are legally on the land. Real estate professionals, bankers, appraisers and prospective buyers often view property while it is under construction." Appellant's Appendix at 18. We agree. It was reasonably foreseeable that other construction workers, prospective buyers, and other necessary professionals would be visiting the construction site. Further, it was reasonably foreseeable that a person would step on the Celotex.

Guy's Concrete and Modern were performing work and had some control over the opening to the basement and the Celotex. Further, Dawn was rightfully on the premises. Consequently, Guy's Concrete and Modern owed a duty of care to Dawn,

and the trial court did not err by denying the motions for summary judgment filed by Guy's Concrete and Modern on this issue. *See, e.g., Blake,* 674 N.E.2d at 170–173 (holding that the trial court erred by granting summary judgment to the contractor where genuine issues of material fact existed regarding a duty to an injured construction worker).

## II. Proximate Cause

 The next issue is whether the trial court erred by denying Guy's Concrete's motion for summary judgment which alleged that its actions were not the proximate cause of Dawn's injuries.[5] Guy's Concrete argues that its actions were not the proximate cause of Dawn's injuries because Slager Homes' act of inviting Dawn to visit the home with the knowledge and approval of the use of Celotex over the basement opening "cuts off any assumed negligence by Guy's Concrete." Appellant's Brief of Guy's Concrete at 25–26.

 In determining whether an act is a proximate cause of an injury, we consider whether the injury was a natural and probable consequence of the negligent act, which in light of the attending circumstances, could have been reasonably foreseen or anticipated.[6] *Goldsberry,* 672 N.E.2d at 479. Our supreme court has held that "if harm is a natural, probable, and foreseeable consequence of the first negligent act or omission, the original wrongdoer may be held liable even though other independent agencies intervene be-

---

5. Modern also appears to argue that its actions were not the proximate cause of Dawn's injuries because even if Webb "had arrived at the premises minutes after [Dawn], instead of minutes before, she still would have fallen." Appellant's Brief of Modern at 15. "A party may not advance a theory on appeal which was not originally raised at the trial court." *Hay v. Hay,* 730 N.E.2d 787, 793 (Ind.Ct.App. 2000). To the extent that Modern presents an argument regarding the proximate cause of Dawn's injuries, Modern has waived the argument by failing to present the argument to the trial court. Also, it might be more to the point to consider whether Dawn would have fallen had Webb cautioned her to "mind the Celotex."

6. In *Goldsberry,* we differentiated between foreseeability as a component of duty and foreseeability in the context of proximate cause as follows:

> Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the incident occurs. According to the American Law Institute, foreseeability for proximate cause purposes is determined from a perspective that is "after the event and looking back from the harm to the actor's negligent conduct." Restatement (Second) of Torts § 435(2) (1965). As stated in Indiana, "[a] negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated." Thus, when determining proximate cause, foreseeability is determined based on hindsight, and accounts for the circumstances that actually occurred.
>
> By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. Additionally, proximate cause is normally a factual question for the jury, while duty is usually a legal question for the court. As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.
>
> *Goldsberry,* 672 N.E.2d at 479 (internal citations omitted).

tween his negligence and the ultimate result." *Heck*, 786 N.E.2d at 271. Thus, reasonably foreseeable intervening acts do not break the chain of causation and the "original wrongful act will be treated as a proximate cause." *Id.* In general, "[t]he foreseeability of an intervening cause and, thus, whether the defendant's conduct is the proximate cause of the plaintiff's injuries, is a question of fact for the jury's determination." *Nat'l R.R. Passenger Corp. v. Everton by Everton*, 655 N.E.2d 360, 366–367 (Ind.Ct.App.1995), *trans. denied.* However, "where it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law." *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 917 (Ind.Ct.App.2001).

As previously noted, in general, it is foreseeable that prospective buyers would visit the construction site of a new home. We cannot say that it was unforeseeable that Slager Homes would invite Dawn to visit the home while the Celotex covered the basement opening. Moreover, the Crawfords designated the testimony of several subcontractors that placing Celotex over a basement opening was dangerous. Consequently, we cannot say that the imposition of liability upon Guy's Concrete would not be justified. Thus, a determination of proximate cause cannot be made in this case as a matter of law. Whether Guy's Concrete's conduct is the proximate cause of Dawn's injuries is a question of fact for the jury to determine. Genuine issues of material fact exist and summary judgment would not have been appropriate on this issue.

For the foregoing reasons, we affirm the trial court's denial of the motions for sum-

mary judgment filed by Guy's Concrete and Modern.

Affirmed.

BARNES and RILEY, JJ., concur.